

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2004

# Jansen v. USA

Precedential or Non-Precedential: Precedential

Docket No. 02-4215

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Jansen v. USA" (2004). *2004 Decisions.* Paper 653.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/653

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-4215

_____

ROBERT JOHN JANSEN, JR.,

Appellant

v.

UNITED STATES OF AMERICA

_____

On Appeal from the
United States District Court
for the Middle District of Pennsylvania
Criminal Action No. 4:98-CR-240
(Honorable James L. McClure, Jr.)

_____

Argued January 22, 2004
Before: ALITO and CHERTOFF,
Circuit Judges, and DEBEVOISE*,
Senior District Court Judge

(Filed: May 21, 2004)

JAMES V. WADE
Federal Public Defender
For the Middle District of Pennsylvania

_____

*Honorable Dickinson R. Debevoise,
United States Senior District Judge for the
District of New Jersey, sitting by designation.

DANIEL I. SIEGEL
Assistant Federal Public Defender

D. TONI BYRD (Argued)
Assistant Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
　　Attorneys for Appellant,
　　Robert John Jansen, Jr.

THOMAS A. MARINO
United States Attorney

THEODORE B. SMITH, III (Argued)
Assistant United States Attorney
Federal Building
228 Walnut Street
Harrisburg, PA 17108
　　Attorneys for Appellee,
　　United States of America

_____

OPINION

_____

**Debevoise, United States Senior District Judge**

　　Defendant, Robert John Jansen, Jr., filed a petition pursuant to 28 U.S.C. § 2255, asserting that his trial counsel was ineffective for failing to argue at his sentencing for drug possession with intent to distribute that the amount of drugs in his possession intended for personal use should not have been included in the base offense level calculation. The District Court held that, assuming trial counsel was ineffective in this regard, defendant was not prejudiced for the reason that there was

a strong connection between the drugs defendant intended to distribute and any drugs he held for personal use, and therefore all amounts of drugs he possessed should enter into the base offense level computation. We hold, in agreement with the opinions of the other Courts of Appeals that have ruled upon this issue, that when a conviction is for simple possession with intent to distribute, the amount of drugs a defendant possessed for personal use must be determined and may not be included in the base offense level computation. Counsel was ineffective for failing to raise this issue at the time of sentencing, and this failure may have resulted in prejudice to defendant. The judgment of the District Court will be reversed and the case will be remanded for a determination of the amount of drugs, if any, which defendant possessed for personal use and, if appropriate, recomputation of defendant's base offense level in accordance with this opinion.

## I. Background

After midnight on June 30, 1998 Pennsylvania State troopers stopped a light blue Chevrolet Spectrum with two male occupants and a silver Toyota Camry which appeared to be accompanying the Spectrum and which also had two occupants. The troopers had previously received information that the Spectrum would be transporting illegal drugs from the New York City area back to Pennsylvania. Defendant was the passenger in the Spectrum. Its driver was Andrew DeHart. The driver of the Camry was a Hispanic male who went by the nickname of "Louie." The passenger was another Hispanic male.

The troopers retrieved a plastic bag from defendant's groin area. Subsequent laboratory analysis disclosed that within the bag were two smaller bags, one containing 34.2 grams of cocaine and the other containing 16.3 grams of crack cocaine. Defendant also had on his person $770 in currency and a pager. Shortly after the stop a drug detection canine was brought to the scene, and the driver of the Spectrum, DeHart, consented to a search. There was discovered on the rear floor a black videocassette recorder ("VCR") which contained a number of plastic bags. Analysis later disclosed that these bags contained a total of 448 grams of cocaine.

Neither a consent search nor a dog sniff of the Camry disclosed any drugs, and consequently the troopers permitted the two Hispanic males to proceed on their way.

Shortly after defendant had been searched and the drugs found on his person he volunteered that he was going to have to find out "who told the police on him," as there were only two people who knew "he made this run." (II App. 157). He added that only one of the two knew what kind of vehicle he drove, so he had it "pretty much narrowed down." (II App. 164). He also stated that he could offer information that would yield the troopers three to four times the quantity of drugs the stop would yield. (Id.)

The troopers advised defendant of his constitutional rights approximately

2

one-half hour after the stop. There was an interval of time during which the two cars were searched and then defendant was again advised of his constitutional rights. (II App. 177). When asked what was in it for him the troopers informed defendant only that his cooperation would be made known to his sentencing judge. The defendant then stated that the cocaine found in his pants was "all for him,. . . that he was not going to deliver that to anybody in the area, [and] that it was strictly his." (II App. 178)

Defendant also told the trooper who was questioning him that he had just gone to New York City to meet an individual named "Louie," that Louie had given him an ounce of cocaine, that he had also purchased the crack cocaine from Louie, and that these quantities of cocaine were the drugs seized from his pants (II App. 178-79, 233-34). Further, according to defendant, Louie, who was the person driving the Camry, had also delivered to him the VCR containing cocaine which he was to deliver to a man named Richy Willow in Middleburg, Pennsylvania, early that morning (II App. 179).

The usual procedure, according to defendant, was for Willow to contact Louie in New York by telephone and place a cocaine order, after which Louie would communicate with defendant to inform him that there was a package to pick up in New York (II App. 179). Defendant would then drive to New York, take delivery of a VCR containing cocaine and drive back to Pennsylvania in order to deliver the VCR to Willow. Louie would follow defendant from New York to Willow's residence and receive payment from Willow. Before leaving for Pennsylvania Louie would deliver to defendant a quantity of cocaine as payment for his transportation services. (II App. 179-80).

On October 13, 1998 a grand jury returned a one count indictment charging defendant with distribution and possession with intent to distribute cocaine and cocaine base and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. He proceeded to trial. Testifying in his own defense, defendant recanted the incriminating statements he had made on the night of his arrest (II App. 219-36; III App. 277-87). At trial he testified that the driver, DeHart, had called him and asked him to ride along with DeHart on a trip to New York, because DeHart did not like traveling alone (II App. 221). He went along because he needed cocaine to satisfy his own habit (Id.) Defendant asserted that he knew DeHart "was up to something" but he did not know what it was. (Id.). In a somewhat contradictory vein he testified that he knew the VCR contained cocaine, although he did not know how much, and that it would be delivered to Willow after being transferred to the vehicle that followed them from New York (II App. 226).

Although defendant disavowed most of the incriminating statements he had made on the night of his arrest, he reiterated his initial contention that the cocaine and crack cocaine seized from his

pants were for his own personal use. (II App. 228). He went to New York to obtain cocaine because it was cheaper there. He admitted he introduced people to his sources and facilitated their purchases in order to obtain a cheaper price for his own drugs. (II App. 228-30). He was unemployed on June 30, 1998, but testified that he had paid $1,000 for the nearly two ounces of cocaine and crack cocaine seized from his pants. He explained that the $770 seized from him at the time of the stop was the proceeds of the sale of two cars that belonged to his father. (II App. 238, 235).

On cross-examination defendant admitted that on occasion he would sell some of what he brought back for himself to finance his next purchase, cocaine being much cheaper in New York. (II App. 283-84). Specifically, defendant admitted that he had sold one-eighth ounce quantities or "eight balls," of cocaine in Milton for approximately $150 and that he sold an "eight ball" of cocaine to an undercover state trooper 30 days before his arrest on May 29, 1998. (II App. 285). Defendant set his price so as to be able to use the proceeds to purchase more cocaine. (II App. 287).

During his principal and rebuttal closing arguments the Assistant United States Attorney argued strenuously that both the cocaine contained in the VCR and the cocaine and crack seized from defendant's pants were possessed with intent to distribute. Citing the fact that cocaine was much cheaper in New York the government asked rhetorically ". . .

why would[n't] you get two ounces, bring it back when you can sell one of those two and make enough money to buy another one or two ounces and use the other ounce?" (II App. 345).

> . . . [I]f you bring back an ounce of cocaine and you break it down to eight balls and sell it at $150 each, you can see that you can use half and sell half [,] an eight ball [ ] being an eighth of an ounce. You can sell it to make enough money to buy another ounce on your own.

(IV App. 346)

The jury found defendant guilty. It did not, and was not required to, make a special finding as to whether the drugs found in defendant's pants were possessed with intent to distribute.

Using the 1998 edition of the United States Sentencing Guidelines Manual the probation officers who prepared defendant's presentence report ("PSR") calculated the drug quantity under the drug trafficking guideline at U.S.S.G. § 2D1.1. The calculation included i) the 448 grams of powdered cocaine found in the VCR at the time of arrest, ii) 50 ounces of cocaine that defendant admitted he possessed for distribution on previous trips, iii) the 16.3 grams of crack cocaine found on defendant's person that defendant told the trooper were for personal use, and iv) the 34.2 grams of powdered cocaine found on defendant's person that defendant told the troopers

4

were for personal use. These quantities, when converted to marijuana equivalents, yielded a total weight of 705.94 kilograms of marijuana. (PSR, par. 4-12).

Pursuant to U.S.S.G. § 2D1.1(c)(5) this amount fell within the 700 to 1,000 kilogram range, resulting in an offense level of 30. An offense level of 30, combined with a criminal history category of III, produced a sentencing range of 121 to 151 months.

At sentencing defendant's counsel raised an objection to the computation of the offense level, arguing that the uncharged "historical" distributions attributed to defendant should not be included. The court rejected this argument and sentenced defendant to 121 months imprisonment.

At the time of sentencing the Courts of Appeals for the Seventh and Ninth Circuits had held that drugs possessed for personal use may not be included in calculating a Guideline sentence for possession with intent to distribute under U.S.S.G. § 2D1.1. United States v. Wyss, 147 F.3d 631 (7th Cir. 1998); United States v. Kipp, 10 F.3d 1463 (9th Cir. 1993). Defense counsel did not argue that the drugs found in defendant's pants were for personal use and should not be counted in computing the offense level. Had he successfully argued that point, the drugs in the VCR and the drugs previously distributed would have produced a total marijuana equivalent of 373.1 kilograms. Marijuana in the range of 100 to 400 kilograms produced an offense level of 26.

In defendant's circumstances his sentencing range would have been 78 to 97 months. Even if only a portion of the drugs found in defendant's pants were found to have been for personal use and were excluded from the base offense level computation, defendant would have fallen into a less than 700 to 1,000 kilogram range, and his sentencing range would have been less than 121 to 151 months. In any event, this contention was not raised in the District Court.

Defendant appealed his conviction. The appeal focused on the suppression of evidence obtained during his arrest. The Court of Appeals affirmed the judgment of the District Court.

On October 30, 2001 defendant filed an amended petition for post conviction relief pursuant to 28 U.S.C. § 2255. He contended, among other things, that his trial counsel had been ineffective in failing to object to consideration of drug quantities which were for personal use. In two comprehensive opinions dated August 22, 2002 and November 1, 2002, respectively, the District Court addressed the six claims that defendant advanced. The Court ordered that the petition be denied in its entirety and that there was no basis for issuance of a certificate of appealability.

Relevant to the instant appeal is the portion of the District Court opinion that dealt with defendant's contention that his trial counsel was ineffective for failing to argue at the time of sentencing that the drugs found in his pants were for personal

5

use and should not have been included in the offense level computation. The Court noted that as of the date of its opinion the Court of Appeals for the Second and Eighth Circuits had joined those of the Seventh and Ninth Circuits in holding that when calculating the base offense level for a conviction of possession with intent to distribute, a District Court must exclude those drug quantities reserved for personal use. United States v. Williams, 247 F.3d 353, 355 (2nd Cir. 2001); United States v. Fraser, 243 F.3d 473, 475 (8th cir. 2001)[1]. The opinion also referred to the one Court of Appeals opinion which holds that personal use quantities may be included in the calculation of the base offense level. United States v. Antonietti, 86 F.3d 206, 210 (11th Cir. 1996).

The District Court disagreed with the premise it attributed to the majority of the Court of Appeals that "the act of setting aside narcotics for personal consumption is . . . not a part of a scheme or plan to distribute these drugs. Williams, 247 F.3d at 358." (I App. 54). Instead the District Court found persuasive the reasoning of the dissent in Fraser. The dissent contended that when a defendant's attempted purchase of the drugs for personal use was "inextricably

intertwined" with her attempted purchase for distribution, the entire quantity should be countable for sentencing purposes. Fraser, 243 F.2d at 477. Applying the reasoning of the Fraser dissent, the District Court stated:

> We believe that the reasoning of the Fraser dissent is applicable to Jansen's case. Jansen's possession of the crack cocaine was part and parcel of his attempt to distribute the powder cocaine in the VCR. The crack was obtained as a result of Jansen's trip to New York. Jansen received the crack from the person who gave him the VCR. The connection between the drugs Jansen intended to distribute (the powder cocaine in the VCR) and the drugs Jansen allegedly intended for his own use (the crack on his person) was strong enough that his use of both drugs "occurred during the commission of the offense of conviction." Therefore, all amounts of drugs possessed by Jansen were properly considered to be relevant conduct.

(I App. 56)

Recognizing that its decision conflicted with the holdings of four courts

---

[1] After the District Court issued its opinion the Court of Appeals for the Sixth Circuit joined the courts which had held that in a possession with intent to distribute case possession of drugs for personal use could not be considered relevant conduct for sentencing purposes. United States v. Gill, 348 F.3d 147 (6th Cir. 2003).

of appeals, the District Court stated that "a valid question may be raised as to whether counsel's failure to object to our sentence calculation constituted deficient performance." (I App. 57). However, because the Court had concluded that all of the drugs, including those found in defendant's pants, should be included, it found that defendant had suffered no prejudice from any shortcomings of his counsel, i.e., he "[had] failed to establish that there is a reasonable probability that, but for counsel's failure to object, the result of the proceeding would have been different." (Id.). The District Court denied defendant's claim of ineffective assistance of counsel.

Defendant requested a certificate of appealability from this Court. We granted the request on the issue whether defendant's counsel was constitutionally ineffective for failing to argue at his sentencing hearing that the drugs seized from his person should not have been included in the base offense calculation for possession with intent to distribute. This appeal followed.

## II. Jurisdiction and Scope of Review

The District Court had subject matter jurisdiction of defendant's petition for post-conviction relief pursuant to 28 U.S.C. § 2255. We have jurisdiction of his appeal pursuant to 28 U.S.C. §§ 1291 and 2253(a).

The District Court did not make a finding with respect to Defendant's contention that his counsel's failure to object to the sentencing computation constituted deficient performance. Rather it held that even if performance were deficient, defendant suffered no prejudice, ruling that personal use quantities are not excluded from the base offense level computation in a possession with intent to distribute conviction. This ruling raises a question of law and is subject to plenary review. Parrish v. Fulcomer, 150 F.3d 326, 327 (3d Cir. 1998).

## III. Discussion

To succeed on a claim of ineffective assistance of counsel, a defendant must show both that i) the performance of counsel fell below an objective standard of reasonableness and ii) the errors of counsel prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-88, 691-92 (1994). To establish the first prong a defendant must "establish . . . that counsel's performance was deficient." Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001). "This requires showing that counsel was not functioning as the 'counsel' guaranteed defendant by the Sixth Amendment." (Id.).

In the circumstances of this case defense counsel's failure to raise the personal use argument at the time of sentencing must be deemed to constitute ineffectiveness. The District Court did not find otherwise and the government does not contend otherwise. From the time of his arrest until he testified at his trial defendant maintained that the drugs found in his pants were for personal use. There was evidence that he intended to sell some of those drugs in order to finance future

purchases. At trial the government did not argue that <u>none</u> of those drugs were for personal use; rather it argued that <u>some</u> of the drugs found in defendant's pants were to be sold to enable him to continue to obtain drugs for personal use.

At the time of sentencing two Courts of Appeals had held that drugs possessed for mere personal use are not relevant to the crime of possession with intent to distribute and should not enter into the base offense level computation. <u>United States v. Wyss</u>, <u>supra</u>; <u>United States v. Kipp</u>, <u>supra</u>. One Court of Appeals had held that drugs possessed for personal use should be included in the base offense level computation in a possession with intent to distribute case. <u>United States v. Antonietti</u>, 86 F.3d 206 (11th Cir. 1996). However, <u>Antonietti</u> was not a mere possession case; it was a case that included a charge of conspiracy to possess with intent to distribute and thus arguably was distinguishable from <u>Wyss</u> and <u>Kipp</u>. Competent counsel would have advanced at sentencing the contention that the drugs defendant claimed were for personal use should not enter into the computation of the base offense level.

Despite a strong presumption that counsel's performance was reasonable, <u>Strickland</u>, 466 U.S. at 689, that presumption is overcome here. The conclusion that counsel's performance was ineffective is not based on hindsight. The decisions in <u>Wyss</u> and <u>Kipp</u> were readily available to him. Nor can any considered sound strategy be discerned for failing to raise the personal use issue. We have held

that trial counsel is ineffective for failing to urge that a defendant was entitled to an arguably available minor role Sentencing Guideline reduction. <u>United States v. Headley</u>, 923 F. 2d 1079, 1084 (3rd Cir. 1991). By the same token where defense counsel fails to object to an improper enhancement under the Sentencing Guidelines, counsel has rendered ineffective assistance. As the District Court recognized, the controlling issue is whether defendant suffered prejudice by reason of this failure.

If some or all of the drugs discovered on defendant's person were for personal use and if possession of drugs for personal use should not constitute relevant conduct when a defendant is sentenced for possession with intent to distribute, defendant suffered prejudice in this case. Even a small reduction in the quantity of drugs entering into the base offense level computation would have placed defendant in a less than 700 to 1,000 kilogram range. It is for the District Court to determine the amount of drugs, if any, which defendant possessed for personal use. Whether such possession constitutes relevant conduct for the purpose of computing defendant's base offense level is a question of law that has not yet been decided by this Court.

Defining relevant conduct, U.S.S.G. §1B1.3 reads in pertinent part:

> (a) . . . unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level .

. . should be determined on the basis of the following:

(1)   (A)   all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B)   in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)   solely with respect to offenses of a character for which §3D1.2(d) would

require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;[2]

Applying these provisions, five Courts of Appeals have held that in a possession for distribution case possessing drugs for personal use does not constitute relevant conduct and the quantity of such drugs should not be included when computing the base offense level. Only the opinion in <u>Antonietti</u> and the dissent in <u>Fraser</u> take a contrary view.

A common rationale runs through each of the five majority opinions. Each contrasts the seriousness of the offense of distributing drugs with that of possession for one's personal use and rejects an interpretation of the guidelines that would punish each of these offenses with equal severity. For example, in <u>Kipp</u> the Court observed that ". . . failure to distinguish the amount possessed for personal use from the amount possessed for distribution contravenes a fundamental principle of the Sentencing Guidelines - proportionality in sentencing - because it would result in sentencing a drug user who possessed 50 grams for personal use and gave one away more harshly than a drug dealer who

---

[2]   These provisions in the 1998 Guidelines Manual are the same as the provisions in the current manual.

9

possessed 49 grams for distribution." 10 F.3d at 1466. Although arriving at the same conclusion, the various Courts have reached that destination by different routes.

Two of the cases, Kipp and Williams, rely upon Section (a)(2) of U.S.S.G. §1B1.3. In Kipp the Court stated:

> The guidelines instruct the District Court to calculate the base offense level using only the quantity of drugs involved in the count of conviction and quantities that "were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3(a)(2). Drugs possessed for mere personal use are not relevant to the crime of possession with intent to distribute because they are not "part of the same course of conduct" or "common scheme" as drugs intended for distribution. Accordingly, we hold that in calculating the base offense level for possession with intent to distribute, the district court must make a factual finding as to the quantity of drugs possessed for distribution and cannot include any amount possessed strictly for personal use.

10 F.3d at 1465, 66 (footnote omitted). Similarly in Williams the Court held that "[u]nder U.S.S.G. § 1B1.3(a)(2), in determining the quantity of drugs relevant to a defendant's offense level under the sentencing guidelines, only drugs 'that were part of the same course of conduct or common scheme or plan as the offense of conviction' are to be considered," and that drugs possessed for personal use are not "part of the same course of conduct" or "common scheme" as drugs intended for distribution. 247 F.3d at 357. The Court, as have the other Courts of Appeals, distinguished Antonietti on the basis that Antonietti involved a conspiracy to possess with intent to distribute, implicating different considerations, see U.S.S.G. §1B1.3(a)(1)(B).

Two of the Courts, while agreeing with the results in Kipp and Williams, reject reliance on Section (a)(2), and either expressly or by implication rely on Section (a)(1) of U.S.S.G. § 1B1.3 for their conclusion that possession for personal use is not relevant conduct in a distribution case. They note that Section (a)(2) applies "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts" and further note that simple possession is not one of the crimes listed in the grouping rule. As the Court stated in Gill:

> Simple possession is not "relevant" under Section 1B1.3(a)(2), as "part of the same course of conduct or common scheme or plan," because that section applies

10

only if the two offenses can be grouped under Section 3D1.2(d). *See Hill*, 79 F.3d at 1482. Simple possession is not one of the crimes listed in this grouping rule that triggers the application of that relevant conduct section.

348 F.3d at 153. Wyss is to the same effect. Citing Section (a)(2) the Court stated that "[t]o count as relevant conduct under the federal sentencing guidelines, a drug offense . . . must be part of the same course of conduct or common scheme or plan, as the offense of conviction." Then he noted that "[i]t can be that only if it is part of the same group of offenses for sentencing purposes." 147 F.3d at 632. This suggests that the Court was stating that if Section (a)(2) were applicable possession of drugs for personal use would be relevant conduct as part of the same course of conduct or common scheme. This, of course, is contrary to the opinions in Kipp and Williams which held that Section (a)(2) is applicable but that possession for personal use is not part of the same course of conduct or common scheme to posses for distribution. The Court in Wyss concluded, however, that Section (a)(2) was not applicable because possession for personal use cannot be grouped with other offenses.

Wyss, after rejecting reliance on Section (a)(2), did not refer to Section (a)(1), but by implication must have concluded that Section (a)(1) did not render mere possession for use relevant

conduct in a possession with intent to distribute case. The opinion set forth common sense reasons for excluding possession of drugs for personal use as relevant conduct.

In Gill the Court, having held Section (a)(2) to be inapplicable, relied on Section (a)(1) for its holding that possession of drugs for personal use is not relevant conduct when computing the base offense level in a possession for distribution case:

> Uncharged conduct may be considered in calculating the sentencing range under the Sentencing Guidelines only if the conduct is "relevant." Returning to the Sentencing Guidelines Manual's language - - which we hesitate to describe as "plain," although it is unequivocal - - the defendant's possession of drugs for personal use cannot be considered an "act[ ] . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" under Section 1B1.3(a)(1), since the offense of conviction required an intent to distribute to accompany the act of drug possession under

11

21 U.S.C. § 841(a). Possessing drugs for personal use was not part of or connected to the commission of, preparation for, or concealment of the distribution type offense.

348 F.3d at 153 (citations omitted).

It is not entirely clear whether the majority opinion in Fraser relied on Section (a)(2) for its holding that possessing drugs for personal use is not relevant conduct in a possession for distribution case. The opinion cited approvingly both Wyss, which rejected reliance on Section (a)(2), and Kipp, which relied on Section (a)(2). By implication the majority opinion holds that Section (a)(1) does not require that possessing drugs for personal use be deemed relevant conduct in a possession with intent to distribute case.

By one route or another five Courts of Appeals have reached the same conclusion. Only the Court of Appeals for the Eleventh Circuit has held that when calculating the base offense level under § 2D1.1 of the Guidelines drugs possessed for personal use should be included. United States v. Antonietti, supra. Kipp was decided before the decision in Antonietti. Each of the relevant Court of Appeals cases that was decided after Antonietti distinguished Antonietti, pointing out that it was not a simple possession with intent to distribute case; rather it dealt with not only possession with intent to distribute but also conspiracy

to distribute. In a conspiracy the amount of drugs involved is unaffected by the use that a defendant makes of the drugs. Gill, 348 F.3d at 154, Williams, 247 F.3d at 357-58, Fraser, 243 F.3d at 475 n.4; Wyss, 147 F.3d at 632. The dissent in Fraser advanced the position that Fraser's "purported purchase of methamphetamine for her own use, purchased at the same time as the methamphetamine she intended to sell is tested under the more general relevant conduct provision contained in § 1B1.3(a)(1)(A). Under § 1B1.3(a)(1)(A), relevant conduct includes 'all acts . . . that occurred during the commission of the offense of conviction.'" 243 F.3d at 476-77 (emphasis in original). The dissent emphasized that "[t]he attempted drug purchase was one transaction involving a single, fungible quantity and a single type of drug" and, relying on Antonietti, concluded that "whether Ms. Fraser purchased some of the drugs for her personal use 'make[s] no difference' in computing her sentence under the Guidelines." 243 F.3d at 477.

The District Court in the instant case found the reasoning of the dissent persuasive. The Court noted that all the seized drugs derived from a single purchase in New York City, although some of the drugs were transported in a VCR and some were stored in defendant's pants. It, therefore, held that, applying U.S.S.G. § 1B1.3(a)(1)(A), all of the drugs should be included in the computation of the base offense level.

The government urges that we adopt the rule advanced in the Fraser

12

dissent and applied by the District Court, contending that "the operation of section 1B1.3(a)(1) is not qualified by the operation of section 1B1.3(a)(2), and the base offense level was properly 'determined on the basis of all acts . . . committed [ ]. . . by the defendant . . . that occurred during the commission of the offense of conviction." (Govt. Brief at 29, 30). The government argues that U.S.S.G. § 1B1.3(a)(1)(A) says nothing about whether an act need be part of a scheme or plan to distribute drugs in order to be counted as relevant conduct. Rather, under § 1B1.3(a)(1)(A), if the act "occurred during the commission of the offense of conviction," it is relevant. If this argument were accepted defendant's possession for personal use occurred during the commission of the crime of possession with intent to distribute and should, therefore, be considered relevant conduct. In such event he would not have been prejudiced by the failure of his counsel to have raised the issue at the time of sentencing.

Contrary to the government's contentions, we conclude that Section (a)(2) is applicable, that mere possession of a drug for personal use is not part of the same course of conduct or common scheme as the offense of possession with intent to distribute drugs and that Section (a)(1) is not applicable.

As observed by the five Courts of Appeals that have reached a similar ultimate conclusion, this result is in accord with an overall objective of the Sentencing Guidelines. The crime of possession for personal use is qualitatively very different from the crime of possession with intent to distribute and merits a significantly different level of punishment. Were the quantity of drugs possessed for use added to the quantity possessed for distribution serious sentencing anomalies could result. As stated in Kipp, it would contravene "a fundamental principle of the Sentencing Guidelines - proportionality in sentencing." 10 F.3d at 1466.

The government has argued, and several Courts have agreed, that Section (a)(2) is inapplicable because it applies "solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts," and the offense of simple possession is not groupable under that section. We conclude, however, that the "offenses" to which reference is made in Section (a)(2) are the offenses, or offense, of conviction, in this case possession of drugs for distribution covered by U.S.S.G. §2D1.1 (a groupable offense). An offense within the meaning of Section (a)(2) is not the crime constituting asserted relevant conduct, in this case mere possession of drugs covered by U.S.S.G. §2D2.1. In other words Section (a)(2) defines what constitutes a defendant's relevant conduct when the offense of conviction is a groupable offense, regardless of the nature of the alleged relevant conduct. In this respect we disagree with the Courts of Appeals which have held that because simple possession of drugs is not a groupable offense Section (a)(2) is inapplicable.

This conclusion and our further

conclusion that Section (a)(2) stands on its own and is not expanded or superseded by the provisions of Section (a)(1) finds support in the Application Notes to U.S.S.G. §1B1.3. Application Note 1 treats the two sections as two distinct provisions[3]. Application Note 2 deals extensively with Section a(1)(A) and (B). Application Notes 3 through 10 largely govern Section (a)(2). Application Note 3 provides in part, that "'[o]ffenses of a character for which §3D1.2(d) would require grouping of multiple counts,' as used in subsection (a)(2), applies to offenses for which grouping counts would be required under § 3D1.2(d) had defendant been convicted of multiple counts." That describes the circumstances in the present case, in which the drug distribution offense is groupable. Application Note 10 emphasizes the different approaches of Sections (a)(1) and (a)(2) stating in part "[s]ubsections (a)(1) and (a)(2) adopt different rules because offenses of the character dealt with in subsection (a)(2) (i.e., to which §3D1.2(d) applies) often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for the purposes of sentencing."

We have alluded above to the significant differences between the offense of mere possession of drugs and the offense of possession with intent to distribute. In light of these differences one who happens to possess drugs for his own personal use is not engaged in a "common scheme or plan" with or the "same course of conduct" as, the perpetrators (including himself) of a distribution scheme. This conclusion is in accord with the Guideline Commentary discussing these terms[4].

---

[4] 9. "Common scheme or plan" and "same course of conduct" are two closely related concepts.

(A) Common scheme or plan. For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi. For example, the conduct of five defendants who together defrauded a group of investors by computer manipulations that unlawfully transferred funds over an eighteen-month period would qualify as a common scheme or plan on the basis of any of the above listed factors; i.e., the commonality of victims (the same investors were defrauded on an ongoing basis), commonality of offenders (the conduct constituted an ongoing conspiracy), commonality of purpose (to defraud the group of investors), or similarity of modus operandi (the same or similar computer manipulations were used to execute the scheme).

(B) Same course of conduct. Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other

---

[3] ". . . Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range . . ."

Thus we agree with the majority of the Courts of Appeals to address the issue (Kipp, Wyss, Williams, Fraser majority and Gill) that possession of drugs for personal use is not part of the same course of conduct or common scheme or plan as possession with intent to distribute and therefore is not relevant conduct in a distribution case[5].

---

as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors is absent, a stronger presence of at least one of the other factors is required. For example, where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity. The nature of the offenses may also be a relevant consideration (e.g., a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals).

U.S.S.G. §1B1.3(a)(1), Application Note 9.

[5] In his concurring opinion Judge Alito expresses reservations about this conclusion and notes that "[i]t seems likely that the Sentencing Commission has not considered this issue." While we have concluded that the position of the majority of the Courts of

If any significant portion of the drugs found in defendant's pants was for personal use he was prejudiced by the failure of his counsel to object to the inclusion of such drugs in the computation of his base offense level. The quantity of drugs that defendant held for personal use, if any, will require a finding by the District Court.

The Fraser dissent notes a problem with which district courts will have to deal when applying the requirement to exclude drugs possessed for personal use in distribution cases: "[t]o require district courts to parse out personal use quantities whenever such an allegation is made (and I am sure it will often now be made) will needlessly burden them with yet another finely tuned quantity decision to make under the Sentencing Guidelines system." 242 F.3d at 477. The relevant cases illustrate this problem. In Kipp the defendant admitted to possessing 80 to 90 grams of cocaine but argued that he possessed all but five or six grams for his own personal use. In Fraser the defendant was arrested when she attempted to purchase 456.6 grams of methamphetamine. At the sentencing hearing she testified that she intended to consume the majority of the drugs; the rest she intended to distribute to family and friends. The government produced

---

Appeals is consistent with the structure and commentaries of the Sentencing Guidelines, Judge Alito's suggestion that the Commission address the issue specifically as soon as possible makes good sense.

15

evidence that the defendant had sold methamphetamine in the past. In <u>Williams</u> the defendant, a chronic drug user, claimed that a major part of the 68.9 grams seized upon his arrest was for personal use. In <u>Gill</u> the defendant contended that of the 35.4375 grams of cocaine in his possession only 6.8 grams was possessed with intent to distribute. Each case was remanded so that the district court could determine the amount of drugs possessed for personal use and for re-sentencing based upon only the drugs possessed for distribution.

Fortunately the already existing record in the present case permits the District Court to make a reasonable calculation of the amount, if any, of the drugs contained in defendant's pants that were intended for personal use without the necessity of a full blown evidentiary hearing.

## IV. <u>Conclusion</u>

We have concluded that when sentencing a defendant for possession of drugs with intent to distribute the court should not include for the purpose of computing the base offense level drugs which the defendant possessed for personal use. Accordingly, the order of the District Court will be reversed and the case remanded for further proceedings in accordance with this opinion.

ALITO, <u>Circuit Judge</u>, concurring.

The issue presented in this case is one that should be resolved by the Sentencing Commission. The position taken by most of the courts of appeals regarding the application of U.S.S.G. § 1B1.3(a)(1) and (2) in this context is not easy to reconcile with the language of those provisions, and there seem to be reasonable policy arguments on both sides of the question. On the one hand, it may be argued that drugs possessed solely for personal use should not have the same sentencing consequences as those possessed for distribution. On the other hand, when it has been proven that a defendant possessed drugs with the intent to distribute, the difficulty of deciding whether some portion of those drugs was possessed solely for personal use may counsel against a rule requiring such a determination.

It seems likely that the Sentencing Commission has not considered this issue. If it has, it certainly has not made that clear. If it has not, it should. In view of the position taken by the great majority of the courts of appeals, I concur in this case, but I urge the Sentencing Commission to address the issue as soon as possible.