

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-24-2009

# USA v. Hogeland

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4280

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Hogeland" (2009). *2009 Decisions.* Paper 1146.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1146

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4280
_____

UNITED STATES OF AMERICA

v.

JAMES HOGELAND,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 05-cr-00162)
District Judge: Honorable Paul S. Diamond

_____

Submitted Under Third Circuit LAR 34.1(a)
June 12, 2009

Before: McKEE, HARDIMAN and VAN ANTWERPEN, *Circuit Judges*.

(Filed: June 24, 2009)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

A jury convicted James Hogeland of possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). For the reasons that follow, we will affirm the judgment of the District Court.

I.

Because we write exclusively for the parties, we recount only those facts necessary to our decision.

In May 2004, the Philadelphia Police Narcotics Unit received information from a confidential source that methamphetamine was being shipped via United Parcel Service (UPS) to 6532 Torresdale Avenue in Philadelphia, Pennsylvania, where Hogeland resided. When the package arrived at the UPS facility, the police subjected it to a dog sniff, then later opened it pursuant to a warrant. Inside they found four packages of methamphetamine. The package was then resealed and prepared for a controlled delivery to the Torresdale address as soon as a warrant could be obtained.

An officer posing as a UPS delivery person made the delivery to Hogeland at the Torresdale address, who signed for the package. Minutes later, the police arrested Hogeland outside his garage and searched his home, both pursuant to the warrant. Inside, police found numerous items, including knives, guns, bomb-making components, an improvised explosive device, scales, a smaller quantity of methamphetamine, and powdered ephedrine.

2

At trial, the Government called three expert witnesses to testify, including one from the Bureau of Alcohol, Tobacco, Firearms and Explosives, and one from the Philadelphia Bomb Squad. The jury also heard testimony from a forensic chemist with the Drug Enforcement Administration on the purity and net weight of the methamphetamine (actual)[1] found at Hogeland's address.

After a three-day trial, the jury found Hogeland guilty on all eight counts, and the District Court sentenced him to 600 months imprisonment.

II.

We exercise appellate jurisdiction over Hogeland's claims of trial error under 28 U.S.C. § 1291, and we have jurisdiction to review the sentence imposed by the District Court under 18 U.S.C. § 3742(a).

A.

Hogeland first argues that the evidence was insufficient to support the jury's verdict convicting him of possession with intent to distribute 50 grams or more of methamphetamine (actual) pursuant to 21 U.S.C. § 841. We apply "a particularly deferential standard of review . . . and will sustain the verdict if 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (internal citations omitted).

_____

[1]Methamphetamine (actual) refers to the weight of the controlled substance itself, rather than the weight of the mixture containing methamphetamine as a whole. *See* USSG § 2D1.1.

3

Hogeland contends that, although the prosecution introduced evidence that he possessed a mixture containing methamphetamine, it failed to establish that he possessed with intent to distribute more than 50 grams of methamphetamine (actual). He also argues that evidence recovered from Hogeland's home shows that he intended to cut the methamphetamine mixture with ephedrine before distribution rather than refine the mixture into pure methamphetamine.

Hogeland's argument represents a fundamental misunderstanding of 21 U.S.C. § 841. The statute proscribes a mandatory minimum sentence of ten years imprisonment for possession with intent to distribute "50 grams or more of methamphetamine . . . or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii). Although Hogeland would have this Court read the alternatives set out in the statute as mutually exclusive, both the plain meaning of the statute and case law refute his argument.

Methamphetamine may be measured either by gross weight — including the weight of the cutting agents — or by the net weight of the pure methamphetamine. Although we have never directly addressed this issue, two of our sister circuits have found arguments similar to Hogeland's unavailing. In *United States v. Stoner*, 927 F.2d 45 (1st Cir. 1991), the First Circuit found that the defendant's reading of § 841 as applying only to sales of pure methamphetamine was not only inconsistent with the plain meaning of the statute but also undermined its clear purpose because a clever drug

4

trafficker need only add a pinch of baking soda to an otherwise pure bag of methamphetamine to avoid the statute's mandatory minimum sentence. *Id.* at 46. Also, because almost all drug samples contain trace amount of impurities, the entire first category in § 841 of 50 grams or more of methamphetamine would be rendered moot. *Id.* at 47. This same argument was raised and rejected in *United States v. Rusher*, 966 F.2d 868, 879-80 (4th Cir. 1992).

The Sentencing Guidelines are consistent with *Stoner* and *Rusher*. Note (B) to § 2D1.1 explains that "[t]he term[] . . . 'Methamphetamine (actual)' refer[s] to the weight of the controlled substance, itself, contained in the mixture or substance . . . . In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater."

In this case, when presented with evidence both that Hogeland possessed a package containing 471 grams of a methamphetamine mixture and that the mixture was 73% pure, "'any rational trier of fact could have found . . . beyond a reasonable doubt,'" *Dent*, 149 F.3d at 187 (citations omitted), that Hogeland possessed the requisite amount of 50 grams methamphetamine (actual). Thus, we will affirm Hogeland's conviction under 21 U.S.C. § 841 for possession of methamphetamine with intent to distribute.

B.

5

Hogeland next argues that the evidence was insufficient to support the jury's verdict convicting him of possession of a destructive device in furtherance of a drug trafficking crime. There are two components to this contention. First, Hogeland argues that there exists no reliable evidence that he possessed a destructive device. Second, he argues that there is no nexus between the device and the drug trafficking crime. Because Hogeland did not raise the issue of sufficiency of the evidence below, we review for plain error. *United States v. Miller*, 527 F.3d 54, 62 (3d Cir. 2008).

Hogeland argues that the device was not a bomb and therefore he could not be convicted of possessing a destructive device. The evidence that Hogeland was in possession of a destructive device, however, is compelling. Two experts testified in great detail as to the method of construction, composition, typical uses, and likely effects if detonated of the device found in Hogeland's home. In particular, experts testified that the device contained a fuse, match heads, an M-80-type explosive, explosive powder, and ammunition inside a PVC sheathing. Additionally, experts testified that the device was ready to use at a moment's notice; it needed only to be lit and hurled at a target. From this, a rational trier of fact could have concluded that Hogeland was in possession of a destructive device.

Hogeland's contention that the link between the device and the drug trafficking crime is too attenuated is also unconvincing. The United States Code mandates specific punishment for "any person who, . . . in furtherance of any such [drug trafficking] crime,

possesses a firearm." 18 U.S.C. § 924(c)(1)(A).[2] In *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir. 2000), the Fifth Circuit held that "firearm possession that furthers, advances, or helps forward the drug trafficking offense violates the statute." *Id.* However, "[u]nder § 924(c), the 'mere presence' of a gun is not enough. 'What is instead required is evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense.'" *United States v. Sparrow*, 371 F.3d 851, 853 (3d Cir. 2004) (citation omitted). Relevant factors in determining whether the possession furthered the drug trafficking offense include the "accessibility of the firearm, the type of the weapon, . . . proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *Id.* In *Sparrow*, this Court found that the weapon was "strategically located" so as to be "immediately available" to the defendant during drug transactions. *Id.* at 854. Similarly, in this case the destructive device was located on a shelf in Hogeland's home, near other weapons and close to drug paraphernalia and the tools with which Hogeland would cut the methamphetamine to resell. We find these relevant factors more than sufficient to support the finding that the device was to be used to further drug trafficking.

---

[2]A destructive device qualifies as a "firearm" for purposes of § 924(c). *See* 18 U.S.C. § 921(a)(3)-(4).

7

For the aforementioned reasons, we will affirm Hogeland's conviction under 18 U.S.C. § 924(c) for possession of a destructive device in furtherance of a drug trafficking crime.

C.

Hogeland also argues that we should vacate his sentence because the District Court erred in failing to subtract the methamphetamine intended for personal use, as indicated in the presentence report, from the methamphetamine intended for distribution before establishing the mandatory minimum penalty. Again, because this objection was not raised below, we review for plain error. *United States v. Couch*, 291 F.3d 251, 252-53 (3d Cir. 2002).

Hogeland maintains that our decision in *Jansen v. United States*, 369 F.3d 237 (3d Cir. 2004), required the District Court to determine and subtract the amount of methamphetamine he intended to consume before calculating the amount intended for distribution and applying the minimum penalty. This argument is without merit.

In *Jansen*, we noted that the jury did not — nor was it required to — make a special finding as to whether the drugs in that case had been possessed by the defendant with the intent to distribute, and therefore the offense level was calculated by including both the amount of cocaine he intended to distribute and the amount intended for personal use. *Id.* Contrary to *Jansen*, in the present case the jury expressly found that Hogeland had possessed at least 50 grams of methamphetamine (actual) with the intent to distribute

8

that amount.  Even assuming, *arguendo*, that Hogeland's reported personal use of one gram per week were taken into account by setting aside years' worth of methamphetamine, Hogeland still possessed more than enough of the drug to satisfy the 50-gram requirement of § 841.  Accordingly, we find no error, and will affirm the judgment of sentence imposed by the District Court.

D.

Finally, Hogeland argues that his counsel was ineffective for arguing that he was guilty in direct opposition to his plea of not guilty.  This Court ordinarily does not review ineffective assistance of counsel claims on direct appeal.  Such claims are more properly reserved for collateral proceedings under 28 U.S.C. § 2255, *see United States v. Thornton*, 327 F.3d 268, 271-72 (3d Cir. 2003), except where the record establishes actual ineffectiveness, *see United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991).  This condition is not met in Hogeland's case.  Because Hogeland's ineffective assistance of counsel claim requires an evidentiary finding of an absence of authority, a collateral proceeding in District Court pursuant to § 2255 would be proper in this case.  Thus, we will deny Hogeland's claim of ineffective assistance of counsel without prejudice to his right to raise this claim on a collateral attack brought pursuant to 28 U.S.C. § 2255.

For all of the aforementioned reasons, we will affirm the judgment of the District Court.

9