

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-6-2004

# USA v. Harrison

Precedential or Non-Precedential: Precedential

Docket No. 02-4030

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Harrison" (2004). *2004 Decisions.* Paper 963.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/963

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 02-4030
_____

UNITED STATES OF AMERICA

v.

MICHAEL HENRY HARRISON,
a/k/a Emmanuel Henry Harrison, III

Michael Henry Harrison,

Appellant

_____

APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

(D.C. No. 01-cr-00025-1E)
District Judge:
The Honorable Maurice B. Cohill, Jr.

_____

ARGUED SEPTEMBER 3, 2003

BEFORE: SLOVITER, NYGAARD, and
ROTH, Circuit Judges.

(Filed February 6, 2004)

_____

Renee Pietropaolo, Esq. (Argued)
Karen S. Gerlach, Esq.

Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222
Counsel for Appellant

Paul M. Thompson, Esq. (Argued)
Bonnie R. Schlueter, Esq.
Office of United States Attorney
700 Grant Street
Suite 400
Pittsburgh, PA 15219
Counsel for Appellee

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Michael Henry Harrison challenges
the sixty-three month sentence imposed by
the District Court for trafficking in child
pornography. The single issue on appeal is
whether the sentencing enhancement under
United States Sentencing Guideline
("U.S.S.G.") § 2G2.2(b)(5), for when "a
computer was used for the transmission of
the material or a notice or advertisement of
the material," was properly applied. For
the reasons that follow, we will affirm the
application of the enhancement.

I.

Harrison was indicted as a result of
a sting operation aimed at traders and
collectors of child pornography. He
responded to the following advertisement
from an undercover government agent,

posted on a web site geared toward those interested in child pornography:

> Hi, I am a discreet collector of ACTION VHS Vids on the topic of pre-teens and very young teens and I am looking for others who share my TABOO interests especially if you are from Pennsylvania.

> Please e-mail me at the below address but you must state that you are NOT a cop, fbi, or postal or I will NOT reply.

> Also, please state that you saw this post in YAHOO WILD AND ACTIVE PRE-TEENS so I know your reply is legit.

> Please no flamers, trolls or fantasy trippers.

At the bottom of this advertisement was the email address used by the undercover agent. Harrison responded with the following message:

> Hi, I am a 45 year old male living in NW PA. I saw your post in Active pre teens and want to write. I am not a cop, fbi or postal angent (sic.) and don't much care for them. I am very interested and turned on by young teen and pre teens. Mike.

The undercover agent responded the next day with a message indicating that he possessed sexually explicit videotapes featuring children as young as eight years old. He offered to send a list of these videotapes, and asked Harrison if he had "anything in the way of pics/vids." Harrison responded:

> Hi, I am interested in seeing your list and I have a lot of pics on all ages from 5 to 17 mostly hardcore. I am from Pa. also.

Harrison and the undercover agent exchanged numerous other emails, in which the undercover agent described the explicit contents of the videotapes, and Harrison commented, among other things, "Hope you're not a cop LoL!" and suggested that "Perhaps we could meet someday with some little playmates." Eventually, the two men arranged a trade: Harrison agreed to mail computer disks with at least 150 pornographic pictures to the undercover agent, and in return, the agent agreed to mail Harrison three videotapes entitled "Bath Time," "Doctor's Appointment," and "Incest Family." The undercover agent received four computer disks from Harrison in the mail, each containing explicit pictures of underage boys and girls engaging in sexual conduct. The three videotapes were subsequently conveyed to Harrison in a controlled delivery.

Government agents executed a search warrant on Harrison's house moments after this delivery, seizing the videotapes and Harrison's computer, which contained numerous pornographic pictures and video images of children. While the search was being executed, Harrison agreed to speak

2

to the agents. He told them he had been collecting child pornography for about seven months by downloading it onto his computer from various Internet sites, but that this was the first time he had traded pornography. He admitted he had downloaded the explicit pictures that he later copied onto disks and mailed to the undercover agent. He said he collected child pornography because he was "just curious," and denied ever having sexual involvement with a child.

A grand jury indicted Harrison on three counts. Count one charged him with transporting child pornography in violation of 18 U.S.C. § 2252(a)(1), while counts two and three, respectively, charged him with receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) and possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Harrison agreed to plead guilty to count one under a plea agreement which dismissed counts two and three. The plea agreement further stipulated that Harrison "acknowledges his responsibility for the conduct charged in Counts Two and Three of the Indictment" and "that the conduct charged in those counts may be considered by the Probation Office or by the District Court in imposing sentence."

In the plea colloquy, the District Court asked Harrison if he was admitting to the transportation of child pornography that had been "obtained through the use of a computer and shipped by way of the United States mail." Harrison indicated that he admitted this charge, and also verbally accepted the portion of the plea agreement under which he acknowledged responsibility for the conduct charged in counts two and three.

The maximum sentence under 18 U.S.C. § 2252(a)(2) is fifteen years, and the base offense level is seventeen. The District Court used an offense level of twenty-five, which included eleven levels of enhancement and a three-level reduction for acceptance of responsibility. Together with a criminal history category of II, this yielded a a guideline range of sixty-three to seventy-eight months imprisonment. The Court sentenced Harrison at the bottom of this range: sixty-three months in prison, to be followed by three years of supervision.

The only issue is the District Court's application of § 2G2.2(b)(5), which provides for a two-level enhancement if "a computer was used for the transmission of the material or a notice or advertisement of the material." Before the District Court's decision to apply the enhancement, both parties presented briefs and oral argument on the issue.

II.

Under 18 U.S.C. §§ 3742(a)(1) and (a)(2), this Court has jurisdiction to review sentences imposed in violation of the law or as the result of an incorrect application of the sentencing guidelines. This Court reviews a district court's interpretation of the sentencing guidelines *de novo*, and a district court's findings of fact supporting

3

application of the guidelines for clear error. *See United States v. Butch*, 256 F.3d 171, 177 (3d Cir. 2001). This Court also reviews for plain error a district court's determination of what constitutes relevant conduct for the purposes of sentencing. *See United States v. Perez*, 280 F.3d 318, 352-54 (3d Cir. 2002).

It is important to note at the outset of this analysis that the language of § 2G2.2(b)(5) is phrased in the passive voice. It does not say, as does a similar enhancement under U.S.S.G. § 2G2.4(b)(3), that the sentence shall be enhanced because of *"the defendant's* use of a computer." (emphasis added). Instead, § 2G2.2(b)(5) applies if "a computer *was used* for the transmission of the material" (emphasis added). The enhancement therefore applies whether the defendant uses a computer to transmit "the material" to someone else, or someone else uses a computer to transmit "the material" to the defendant. In other words, in the language of § 2G2.2(b)(5), "transmission" covers both the sending and the receiving of pornographic material, so if the defendant received child pornography by means of a computer, the enhancement is applicable. This interpretation is consistent with the intent evident throughout the sentencing guidelines for offenses involving child pornography, which apply the same penalties for receiving pornography as for sending it – for example, all of the enhancements under § 2G2.2 apply equally to defendants guilty of "receiving, transporting or shipping" child pornography.

The Seventh Circuit Court of Appeals took a similar approach to the interpretation of § 2G2.2(b)(5) in *United States v. Richardson,* 238 F.3d 837 (7th Cir. 2001). In *Richardson*, the defendant pleaded guilty to receiving and possessing child pornography in violation of 18 U.S.C. §§ 2252 (a)(2) and (a)(4), admitting that he had downloaded more than 70,000 pornographic images from the Internet. In holding that the enhancement under § 2G2.2(b)(5) should apply, the court examined the structure of the sentencing guidelines in regard to the child pornography statutes, and observed that they seemed intended to impose the same punishment for receiving and sending pornography:

> Use of the Internet enhances the dangers that child pornography poses, because it is a more discreet and efficient method of distribution; but if this makes the sender more dangerous, it likewise makes the receiver more dangerous. A market has two sides, supply and demand; without both, the market collapses. The senders of child pornography supply it; the demanders receive it. The guideline is acknowledged to treat both sides of the market symmetrically when any method of transmission other than the Internet is used; it would make no sense to treat them differently when the more ominous method is used.

*Richardson*, 238 F.3d at 842.

4

Based on this reasoning, the *Richardson* court concluded that "'computer . . . used for the transmission' in section 2G2.2(b)(5) of the sentencing guidelines does not mean, as the defendant argues, 'computer . . . used *by the defendant* for the transmission'." *Id.* at 841. On the contrary, the court found it clear that the language of the guideline was intended to cover receiving as well as sending, and affirmed the application of the enhancement to Richardson, who pleaded guilty to receiving pornographic images.

Each of the other circuits that has addressed this issue has followed the lead of the Seventh Circuit, in finding that § 2G2.2(b)(5) applies to receiving as well as sending. In *United States v. Dotson*, 324 F.3d 256 (4th Cir. 2003), the Fourth Circuit Court of Appeals held that the computer enhancement was applicable to a defendant who responded to an advertisement for child pornography posted on the Internet. The court found the guideline's use of the passive voice significant:

> Had the Sentencing Commission intended to limit the scope of the enhancement to defendants who forwarded notices or advertisements, it could have easily done so by referring to the defendant in the text of the guideline. . . . In wording the guideline as it did, the Commission addressed not only the solicitor, but also the recipient of such

solicitation. . . . Under the guideline, those who seek out and respond to notice and advertisement of such materials are as culpable as those who initially send out the notice and advertisement.

*Id.* at 259-60.

The Eighth Circuit Court of Appeals made a similar finding in *United States v. Stulock*, 308 F.3d 922 (8th Cir. 2002), in which the court affirmed the application of the § 2G2.2(b)(5) enhancement to a defendant who had seen an advertisement for a pornographic videotape on the Internet, and then ordered and received the tape by mail. The *Stulock* court reviewed with approval the reasoning employed in *Richardson*, finding that the intent of the guidelines was fulfilled by punishing receivers with the same severity as senders. *Id.* at 925. The Sixth Circuit Court of Appeals likewise condoned the conclusions of the *Richardson* court in *United States v. Boyd,* 312 F.3d 213 (6th Cir. 2002), in which it approved the imposition of the enhancement on a defendant convicted of receiving child pornography through his computer.

The facts in this case are not in dispute. Harrison pleaded guilty to transporting through the mail visual depictions of minors engaging in sexually explicit conduct, "such visual depictions having been obtained through the use of a computer." Harrison told a federal agent that he had downloaded some of the

specific pictures which he later sent to the undercover federal investigator. During the sentencing hearing, Harrison's attorney admitted that Harrison downloaded pornographic images onto his computer, copied them onto disks, and later mailed them to the federal agent.[1] Based on these facts, we find it clear that "a computer was used for the transmission of the material" and that the District Court properly applied § 2G2.2(b)(5).

Harrison attempts to sidestep the direct application of the guidelines by defining "the material" as the computer disks sent to the undercover agent, rather than the pornographic material contained on those computer disks. By this reasoning, a computer had not been used to transmit "the material," because "the material" encompasses only the computer disks themselves, which were unquestionably sent through the mail and not via a

computer.[2] Therefore, Harrison argues, the source of the pornographic pictures can only be considered if it qualifies as "relevant conduct" under U.S.S.G. § 1B1.3.

This interpretation of the guidelines is absurd. There is nothing illegal about sending computer disks through the mail – Harrison's crime was the transmission of the pornographic images contained on those disks, not the disks themselves. The heading of § 2G2.2(b)(5) reinforces this obvious reading, since it applies to trafficking "in material involving the sexual exploitation of a minor." The words "the material" found later in the guideline refer back to this heading, and thus "the material" means "the material involving sexual exploitation of a minor."

In Harrison's case, "the material" means the pornographic images contained on the computer disks, and he does not dispute that these images were transmitted to him using a computer. In fact, the count

---

1. Harrison's attorney does not dispute that the images Harrison sent through the mail had, at some point, been downloaded using his computer. During argument before the District Court, Harrison's attorney conceded that: "[E]veryone agrees that he obtained some of these images from downloading them from the Internet, that he put those on disks, mailed them to the undercover agent, and in return had the three video tapes mailed to him." Harrison's attorney made a similar concession in oral argument before this Court.

2. Harrison's attorney conceded during oral argument before this Court that § 2G2.2(b)(5) would apply if he had been convicted of possession of child pornography, but argued that it did not apply because that charge had been dropped. Since possession of pornography is an integral part of the ability to traffic in pornography, and thus incorporated as part of Harrison's offense of conviction, we do not find this distinction compelling.

to which Harrison pleaded guilty specifically alleged that the images he sent to the undercover agent had been downloaded from the Internet. Further, the language of § 2G2.2(b)(5) is specifically targeted toward "the material" and not "the offense," as are other portions of § 2G2.2. The application of the enhancement, therefore, does not hinge on whether the defendant used a computer to commit "the offense" for which he was convicted. Instead, the enhancement hinges on "the material" implicated in the offense, and whether this material had at some point been transmitted using a computer. There is no dispute that "the material" in this case had been so transmitted, and as a result, § 2G2.2(b)(5) is applicable.

The District Court encourages Harrison's foray into the realm of relevant conduct by appearing to base its decision to grant the § 2G2.2(b)(5) enhancement on the conduct detailed in counts two and three, which were dropped by the prosecution, but for which Harrison accepted responsibility in the plea agreement. The Court need not have taken this extra step, since the conduct necessary for the enhancement had been specified in the text of the count to which Harrison pleaded guilty, and thus made an integral part of the offense of conviction. The extra step taken by the District Court, however, takes us to the same place.

First of all, it was entirely appropriate for the District Court to consider the conduct alleged in the dismissed counts. Harrison explicitly accepted responsibility for this conduct, and we have recognized that a sentencing enhancement, and even a departure from the guidelines, can be applied based on conduct alleged in counts that were dismissed as result of a plea agreement. *See United States v. Baird*, 109 F.3d 856, 864 (3d Cir. 1997). Although this conduct must be in some way "related" to the offense conduct, it need not fit into the guidelines' definition of relevant conduct found in § 1B1.3. *Id.* at 865.

In order to be "related" to the offense, "the acts in question must exhibit commonalities of factors sufficient to allow for a reasonable grouping of the separate, individual acts into a larger, descriptive whole. . . . [T]he similarities of the acts must arise from the character or type of the acts." *Id.* Certainly, the conduct involved in receiving child pornography, as charged in count two, is closely related in character to the charge to which Harrison pleaded guilty – especially since receiving pornographic images over the computer was an essential precursor to later trading those images for pornographic videotapes. The District Court was therefore correct in its finding that this related conduct justified the application of the § 2G2.2(b)(5) enhancement, and no discussion of relevant conduct under § 1B1.3 is necessary.

Harrison contends that downloading the pornography is not related conduct, because he downloaded the pictures well before he made an agreement to trade

them.[3] In any case, the temporal relationship between the two actions is not decisive. If Harrison had not downloaded the images, he could not have trafficked in them, and the two actions are therefore closely tied.

Harrison further contends that to apply the guideline in his case would be to cause it to lose all its meaning, and turn it into an enhancement that applies whenever the defendant used a computer in some way related to the pornography, a role already filled by U.S.S.G. § 2G2.4(b)(3). This argument ignores the fact that under our interpretation, the requirement that a computer be used for "transmission" of the pornography still plays an important role in the application of § 2G2.2(b)(5). The guideline applies no matter who used the computer for transmission – the defendant or another party – but it does not apply if a computer was used in a way which is not "transmission," for example to help create, alter, or copy pornography.

Harrison also contends that the application of the "transmission" enhancement to his case would obliterate the distinction between "transmission" and "distribution," the word used in § 2G2.2(2)(A-E). The enhancements for distribution are not limited by any particular method of distribution, however, while "transmission" is specifically qualified by the requirement that it be by a computer. The sections therefore serve distinct purposes: § 2G2.2(b)(5) punishes a specific method of transmission – by computer – while § 2G2.2 (2)(A-E) addresses other forms of distribution. Under these guidelines, handing out pornographic leaflets would be "distribution," but clearly not a "transmission" by computer.

III.

The enhancement under § 2G2.2(b)(5) is also applicable to Harrison's conduct because he used his computer to transmit a "notice" of child pornography. The transportation of child pornography to which Harrison pleaded guilty would not have been possible without the extensive email correspondence that took place between Harrison and the undercover federal agent. The communications began

---

3. Since Harrison told police he had only been downloading child pornography for about seven months before his arrest, the time lapse between his downloading of the material and his use of it to barter can not have been that great – especially because it was nearly three months from the time Harrison first made contact with the undercover agent to the time of his interview with police. Harrison's attorney asserted at oral argument that the holding we make today would mean that the § 2G2.2(b)(5) enhancement would apply to a defendant convicted of trafficking in pornography that he had downloaded from the computer many years beforehand. Although we do not specifically decide this issue, neither are we particularly troubled by the prospect.

8

when Harrison responded to an advertisement on the Internet announcing the availability of videotapes containing child pornography. Harrison's response to the government agent's advertisement was to indicate his interest in the videotapes, and to tell him in the process of bartering that he had "a lot of pics on all ages from 5 to 17 mostly hardcore." The government argues this response is sufficient to constitute "notice . . . of the material" under § 2G2.2(b)(5). We agree.

It is not disputed that Harrison transmitted a description of his pornography collection using his computer, and this transmission is part and parcel of the resulting transportation of the specified pornographic materials through the mail. The only question is whether a message to one person constitutes "notice," or whether the term comprehends information posted to a wider audience, as Harrison contends. The guidelines offer little direct help on this question, as they do not define what constitutes a "notice."

Harrison cites to dictionaries for the proposition that a notice is an announcement, and an announcement is a "public statement or notice." Appellant's Reply Brief at 7 (citing to BLACK'S LAW DICTIONARY (7th ed. 1999) and WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (1984)). On its face, these definitions are counterintuitive, since if the meaning of "notice" comprehended that it was "public," it would not be necessary to modify the definition of "announcement" by

designating it as a "public" notice. Other definitions of notice indicate that it may mean merely "information" or "[I]ntelligence by whatever means communicated." BLACK'S LAW DICTIONARY 1061 (6th ed. 1990). As a result, all that these definitions make clear is that the issue can not be decided through a battle of the dictionaries, and we must look to the purpose and structure of the sentencing guidelines for aid.

The purpose behind the child pornography sentencing guidelines supports a broad definition of the term "notice." The guidelines recognize the enhanced threat posed by the Internet, which greatly increases the ease with which child pornography may be traded. This ease is heightened by an offender's ability to find a suitable partner in a child pornography "chat room," with whom the offender may then trade anonymous emails in order to establish terms for the sale or barter of explicit materials. This method of trafficking eliminates the need for traditional forms of "notice and advertisement" directed toward large numbers of people at random.

Commenting on this method of communication, the Fourth Circuit Court of Appeals found that "the very nature of the Internet provides an 'ominous method' for anonymous predatory criminal conduct." *See Dotson*, 324 F.3d at 260 (quoting *Richardson*, 238 F.3d at 842). Because the sentencing guidelines are clearly aimed at targeting this sort of "ominous" conduct with enhanced

9

punishment, it makes sense to define "notice" in a way that will encompass the savvy and discreet trader in child pornography, who is able to avoid the more dangerous route of public advertisement that would expose his scheme to an unselect audience.

In fact, the language of § 2G2.2(b)(5) contemplates this broader definition of "notice," by contrasting it with an "advertisement." If "notice" is interpreted to mean an announcement to the general public, it leaves very little useful work for the word "advertisement," which is itself defined as "a public notice." *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 59 (1988). We assume that by including both terms, the drafters meant there to be a difference between them – "advertisement" implicates announcement to a wider audience, while "notice" may simply mean the communication of information to another party. As a result, we hold that by sending an email telling the undercover agent that he possessed a variety of pornographic "pics," Harrison used his computer to transmit a "notice" of child pornography, as contemplated under § 2G2.2(b)(5).

IV.

For the reasons set forth above, we find that the District Court properly applied the two-level sentencing enhancement under U.S.S.G. § 2G2.2(b)(5), because "a computer was used for the transmission of the material" that Harrison later mailed to the undercover agent, and because Harrison also used a computer to transmit "notice or advertisement of the material."

_____