PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-3833

_____

UNITED STATES OF AMERICA

v.

ROBERT JOHN KULICK,

Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 08-cr-00168)
District Judge:  Honorable James M. Munley

_____

Argued November 17, 2010
Before:  AMBRO, FISHER and
GREENBERG, *Circuit Judges*.

(Filed: December 29, 2010  )

Theodore B. Smith, III [Argued]
Gordon A.D. Zubrod

Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA  17108-0000
    *Counsel for Appellee*

Peter Goldberger [Argued]
50 Rittenhouse Place
Ardmore, PA  19003-2276

Jeffrey M. Miller
Nasuti & Miller
150 South Independence Mall West
Suite 1064
Philadelphia, PA  19106-0000

Lawrence J. Moran
Lenahan & Dempsey
116 North Washington Avenue
Suite 400, P.O. Box 234
Scranton, PA  18503-0000

Elizabeth J. Reilly-Hodes
Sara B. Richman
Michael Schwartz
Pepper Hamilton
18th & Arch Streets
3000 Two Logan Square
Philadelphia, PA  19103-0000
    *Counsel for Appellant*

―――――――

OPINION OF THE COURT

―――――――


FISHER, *Circuit Judge*.

Robert John Kulick pled guilty to one count of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The United States Probation Office assigned Kulick a base offense level of 23 under the United States Sentencing Guidelines ("Guidelines"), by cross-referencing a dismissed charge for extortion. Kulick raises two arguments on appeal. First, he contends that the District Court's application of the cross-reference in § 2K2.1(c)(1) of the Guidelines, resulting in an increased base offense level and sentence, was improper. Second, he argues that the District Court did not adequately explain its reasons for denying a downward departure or variance. For the reasons stated herein, we will vacate Kulick's sentence and remand for resentencing. Specifically, we hold that the extortion count was not relevant conduct to the unlawful possession of a firearm count, and therefore the cross-reference was improperly applied.


I.

On April 23, 2008, a grand jury returned a four-count indictment against Kulick. Count One involved conduct

3

occurring on March 6, 2008. It charged Kulick with being a felon in possession of six firearms, including a Beretta semi-automatic pistol, in violation of 18 U.S.C. §§ 922(g), 924(a)(2). Counts Two through Four all charged Kulick for conduct occurring in December 2005. Specifically, Count Two charged him with being a felon in possession of a Beretta semi-automatic pistol, in violation of 18 U.S.C. §§ 922(g), 924(a)(2).[1] Count Three charged him with using, carrying, and brandishing a firearm, during, in relation to, and in furtherance of a crime of extortion, in violation of 18 U.S.C. § 924(c)(1). Count Four charged him with obstructing interstate commerce through extortion, in violation of 18 U.S.C. § 1951, by threatening an employee with a Beretta semi-automatic pistol.

On November 14, 2008, Kulick pled guilty to Count One, unlawful possession of a firearm. As part of his plea agreement, the government agreed to move for dismissal of the remaining counts, including the extortion count. Kulick was sentenced on September 15, 2009 under the 2008 edition of the Guidelines.

The United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR

---

[1] Counts One and Two were based on Kulick's 1988 conviction for attempting to evade or defeat personal income tax, a felony in violation of 26 U.S.C. § 7201. As a result of this conviction, federal law barred him from possessing a firearm. *See* 18 U.S.C. § 922(g).

calculated Kulick's base offense level at 23 and his criminal history category at I, yielding a recommended imprisonment range of 46-57 months. The PSR applied the cross-reference provision and used the guideline for extortion, rather than unlawful possession of a firearm, to determine the base offense level. It applied the cross-reference on the basis that the extortion was relevant conduct to the unlawful possession of a firearm offense.[2] Importantly, extortion had a base offense level of 23 (46-57 months), whereas unlawful possession of a firearm had a base offense level of 19 (30-37 months).

Kulick made two main arguments at the sentencing hearing, both of which were rejected by the District Court. First, Kulick objected to the PSR guideline calculation. He argued that the PSR incorrectly applied the cross-reference at § 2K2.1(c)(1), thereby increasing the base offense level to 23. Specifically, Kulick argued that the cross-reference was

---

[2] The fact that the extortion offense was dismissed pursuant to the plea agreement did not preclude it from being offered as relevant conduct at sentencing. *United States v. Baird*, 109 F.3d 856, 863 (3d Cir. 1997); *see also United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996) ("[I]t is well settled . . . that conduct forming the basis for counts dismissed pursuant to a plea agreement may be considered in determining a defendant's base offense level under the Sentencing Guidelines."). Moreover, it was not necessary to prove extortion beyond a reasonable doubt in order for it to be considered for enhancement at sentencing. *United States v. Grier*, 475 F.3d 556, 561 (3d Cir. 2007) (en banc).

inapplicable because of the temporal disconnect between the two crimes. The extortion offense occurred in 2005, while the unlawful possession of a firearm offense occurred in 2008. The government conceded the merit of Kulick's argument, and stated:

> I would have to say when you look at the two cases cited by [Kulick], he has a very strong argument because the gun was not being used to extort the employee at the time the gun was seized. Over a year had passed since that incident.
>
> If the Court finds that the cross reference should not be applied, I think the defense would agree that the Court may still consider the incident as in the sense that it is relevant conduct. It shows the overall conduct of [Kulick].
>
> It is the same weapon as the one seized. The seizures occurred in the same office where the extortion took place, and therefore, the Court may consider it, but not as a cross reference.

(App. at 79-80.) Despite the government's concession, the District Court adopted the PSR's approach and applied the cross-reference to enhance the base offense level to 23.

Second, Kulick argued that his record of charitable contributions and post-arrest alcohol treatment were mitigating factors counseling in favor of a downward departure or variance. Specifically, Kulick argued that he had undertaken alcohol abuse treatment immediately following his arrest and that he had donated approximately $125,000 to six local charitable organizations in the past five years. The District Court stated that it had taken into consideration all of Kulick's arguments and specifically referenced Kulick's alcohol treatment. Nevertheless, it refused to grant a downward variance or departure.

The District Court adopted the PSR in full. It concluded that the total offense level was 23, the criminal history category was I, and the recommended imprisonment range was 46-57 months. The government requested that the District Court depart downward two levels, to level 21,[3] and the court followed this recommendation. The imprisonment range was reduced to 37-46 months, and the District Court sentenced Kulick to 37 months' imprisonment.

Kulick timely appealed.

II.

---

[3] U.S.S.G. § 5K1 provides that the government may move for the court to depart from the Guidelines when a defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense.

7

The United States District Court for the Middle District of Pennsylvania had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Our review of the District Court's interpretation and construction of the Guidelines is plenary. *United States v. Pena*, 268 F.3d 215, 219 (3d Cir. 2001); *United States v. Cohen*, 171 F.3d 796, 802 (3d Cir. 1999). We review the District Court's "factual findings in determining whether the offenses charged were part of one overall scheme or a continuing course of criminal conduct . . . for clear error." *United States v. Randolph*, 137 F.3d 173, 178 (3d Cir. 1998); *see also United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). "A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Wise*, 515 F.3d at 218 (internal citations omitted).

Appellate review of a sentence is for abuse of discretion. *United States v. Jackson*, 523 F.3d 234, 243 (3d Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). First, we review the District Court's order to assure that there was no significant procedural error, such as failing to consider the § 3553(a) factors. *Gall*, 552 U.S. at 51. Second, we consider the substantive reasonableness of the sentence under an abuse-of-discretion standard. *Id*.

III.

Kulick raises two arguments on appeal. First, he argues that the extortion offense was not relevant conduct to the unlawful possession of a firearm offense and that, therefore, the cross-reference was improperly applied. Second, he argues that the District Court did not adequately explain its decision not to depart or vary downward. We will address each contention in turn.

### A. Chapter Two Cross-References.

Section 2K2.1 set the base offense level for Kulick's unlawful possession of a firearm offense at 19. Its cross-reference provision, however, authorized the District Court to set the base offense level higher by cross-referencing another offense:

> [i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply . . . §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above . . .

U.S.S.G. § 2K2.1(c)(1). Before determining whether extortion may be cross-referenced under § 2K2.1(c)(1), we must first address two issues. First, is cross-referenced conduct limited to relevant conduct? Second, if yes, is

extortion relevant conduct to unlawful possession of a firearm?

    1.  Whether § 2K2.1(c)(1) is limited by § 1B1.3.

A split has developed among our sister courts of appeals regarding whether a cross-referenced offense in § 2K2.1(c)(1) must be within the relevant conduct of the charged offense.  In other words: is § 2K2.1(c)(1) limited to relevant conduct as defined in § 1B1.3 of the Guidelines?  We have not yet weighed in, but we do so now and hold that cross-referenced conduct under § 2K2.1(c)(1) must be relevant conduct.

Section 1B1.3 defines relevant conduct and provides a general rule of construction for Chapter Two cross-references.  It explicitly states that "[u]nless otherwise specified, . . . (iii) cross references in Chapter Two . . . shall be determined on the basis of the following [definitions of relevant conduct]."  U.S.S.G. § 1B1.3(a).  Thus, § 1B1.3(a) is "a general application principle that governs both cross-references in Chapter Two offense guidelines and offense level adjustments in Chapter Three, provided those sections do not specify to the contrary."  *United States v. Ritsema*, 31 F.3d 559, 564 (7th Cir. 1994).  Because it is a general principle, the commentary to § 1B1.3 clarifies that cross-references are always limited to relevant conduct unless there are "more explicit instructions."  § 1B1.3, cmt. backg'd.  The general language of § 2K2.1(c)(1) does not constitute an explicit instruction to take a different approach.  Accordingly, courts of appeals to reach this issue, with the exception of the

10

United States Court of Appeals for the Fifth Circuit, have held that § 2K2.1(c)(1) is limited by § 1B1.3 to relevant conduct. *See, e.g., United States v. Settle*, 414 F.3d 629, 633-34 (6th Cir. 2005); *United States v. Williams*, 431 F.3d 767, 771-72 (11th Cir. 2005); *United States v. Jardine*, 364 F.3d 1200, 1209 (10th Cir. 2004); *United States v. Mann*, 315 F.3d 1054, 1056 (8th Cir. 2003); *United States v. Jones*, 313 F.3d 1019, 1022 (7th Cir. 2002).

The Fifth Circuit is the only court of appeals to have held that § 1B1.3 does not restrict the application of § 2K2.1(c)(1). In *United States v. Gonzales*, the Fifth Circuit reasoned that § 2K2.1(c)(1)'s "unlimited references to 'another offense,' indicate[] that it [the offense] is not restricted to offenses which would be relevant conduct but embraces all illegal conduct performed or intended by [the] defendant concerning a firearm involved in the charged offense." 996 F.2d 88, 92 (5th Cir. 1993). Therefore, the court held that, as long as the same firearm was used, any offense committed with that firearm may be cross-referenced regardless of whether it was relevant conduct.

We join the majority of our sister courts of appeals and hold that § 2K2.1(c)(1) cross-referenced conduct must be relevant conduct under § 1B1.3. Section 2K2.1(c)(1) does not explicitly specify an alternative approach to the general rule of construction provided in § 1B1.3. The "mere reference to 'another offense' does not resolve the question of whether the other offense must be within the relevant conduct of the charged offense." *Williams*, 431 F.3d at 772.

11

Therefore, § 1B1.3 limits cross-references in § 2K2.1(c)(1) to relevant conduct.

### 2. Whether extortion was relevant conduct under 1B1.3(a)(2).

The District Court concluded that extortion was relevant conduct to the unlawful possession of a firearm offense, but it did not clarify whether it was relevant conduct under §§ 1B1.3(a)(1) or (a)(2). Both parties suggest that § 1B1.3(a)(2) applies here. Relevant conduct is defined in § 1B1.3(a) as:

> (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
>
> (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction.

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions.

§ 1B1.3(a).

In *Jansen v. United States*, 369 F.3d 237, 248 (3d Cir. 2004), we established a general rule for determining whether §§ 1B1.3(a)(1) or (a)(2) applies to certain conduct. We held that if both sections could apply to the facts of a case, we must apply Section (a)(2). *Id*. at 247-48. Moreover, we held that Section (a)(2) applies "when the offense of conviction is a groupable offense, regardless of the nature of the alleged relevant conduct." [4] *Id*. at 248. Kulick's offense of

---

[4] We note that not every court of appeals agrees with our interpretation of § 1B1.3(a)(2). We apply Section (a)(2) when only the offense of conviction is a groupable offense, rather than requiring both the offense of conviction as well as the relevant offense to be groupable offenses. *Jansen v. United States*, 369 F.3d 237, 248 (3d Cir. 2004). Several courts of appeals disagree with our rationale and require both

13

conviction, unlawful possession of a firearm, is a groupable offense.[5]  *See* U.S.S.G. § 3D1.2(d).  Accordingly, we apply Section (a)(2) to determine whether extortion was relevant conduct to Kulick's unlawful possession of a firearm.

For an act to qualify as relevant conduct under § 1B1.3(a)(2), three conditions must be met:  "(1) it must be

the convicted offense and the relevant conduct offense to be capable of grouping under § 3D1.2(d) in order for Section (a)(2) to apply.  *See, e.g.*, *United States v. Williams*, 431 F.3d 767, 772 n.9 (11th Cir. 2005); *United States v. Gill*, 348 F.3d 147, 153 (6th Cir. 2003); *United States v. Wyss*, 147 F.3d 631, 632 (7th Cir. 1998).

If we were not bound by *Jansen*, an argument might be made that we should not apply Section (a)(2) on these facts, which pertain to firearm offenses rather than drug offenses. Nonetheless, we are bound by our precedent and will therefore apply Section (a)(2).  In any event, we leave for another day whether to recommend en banc consideration of whether *Jansen*'s effect should be limited to drug offenses or to those cases in which the offense of conviction has a higher offense level than the alleged relevant conduct.

[5] Section 3D1.2(d) of the Guidelines defines groupable offenses.  Felon-in-possession offenses are among those specifically listed as groupable.  Although extortion is explicitly listed as an offense that may not be grouped under § 3D1.2(d), we only look to the offense of conviction under *Jansen*.

14

the type of conduct described in § 1B1.3(a)(1)(A) and (B) ('all acts and omissions committed . . . by the defendant'); (2) grouping would be appropriate under § 3D1.2(d); and (3) it must have been 'part of the same course of conduct or common scheme or plan' under § 1B1.3(a)(2)." *United States v. Blackmon*, 557 F.3d 113, 123 (3d Cir. 2009).

The first two conditions are easily satisfied. In accordance with the District Court's findings and the text of § 1B1.3(a)(1)(A), Kulick committed both offenses. Moreover, grouping is appropriate because unlawful possession of a firearm is a groupable offense under § 3D1.2(d). *See Jansen*, 369 F.3d at 248.

The third condition, whether the two offenses were part of the "same course of conduct" or "common scheme," requires a more fact-intensive analysis and is the main issue here. The Guidelines' commentary defines the "same course of conduct" as those offenses that "are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." § 1B1.3 cmt. n.9(B). The commentary also defines a "common scheme or plan" as being at least two offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *Id.* at cmt. n.9(A).

In order to determine whether offenses are part of the same course of conduct, and thus relevant conduct, the Guidelines' commentary provides a three-prong test. The

15

sentencing court must look to: (1) the temporal proximity between the two offenses; (2) the similarity of the offenses; and (3) the regularity of the offenses. *United States v. Wilson*, 106 F.3d 1140, 1143 (3d Cir. 1997) (quoting § 1B1.3, cmt. n.9(B)). Importantly, the test is a sliding scale, so "[e]ven if one factor is absent," relevant conduct may be found where at least one other factor is strong. *Id.* Therefore, "[a]lthough there is no bright-line rule defining what constitutes 'the same course of conduct,'" the relative strengths of the three prongs must be individually assessed. *United States v. Hill*, 79 F.3d 1477, 1484 (6th Cir. 1996). This factual determination is for the District Court to determine in the first instance, and we review for clear error. *United States v. Harrison*, 357 F.3d 314, 317 (3d Cir. 2004), *vacated on other grounds*. Therefore, we turn to the three-prong test to determine whether the District Court properly concluded that extortion was relevant conduct, bearing in mind that "[t]his test is especially important in cases where the extraneous conduct exists in 'discrete, identifiable units' apart from the conduct for which the defendant is convicted." *United States v. Hahn*, 960 F.2d 903, 911 (9th Cir. 1992).

a. Temporal Proximity

The time interval between Kulick's extortion offense and the unlawful possession of a firearm offense, twenty-seven months, is substantial.[6] We are wary to stretch the

_____

[6] The temporal proximity prong measures the time that elapsed between the date of the two charged offenses. Thus, although the government argues at other points that

16

limits of the temporal inquiry because § 1B1.3 "could not reasonably have been intended to cause a court to convert a single possession conviction into a sweeping tool to gather in all of the otherwise unrelated criminality of a defendant which occurred contemporaneously with the charge-offense." *Ritsema*, 31 F.3d at 567. Therefore, although the relevant conduct provision permits a sentencing court to consider events occurring before, during, and after the offense conduct, it is limited by temporal proximity to prevent "absurd results . . . especially in the context of possession crimes." *Id.*

Our sister courts of appeals have issued several opinions that are instructive to this inquiry. As a general principle, "[v]arious courts have found that a period of separation of over one year negated or weighed against [a finding of] temporal proximity." *United States v. Wall*, 180 F.3d 641, 646 (5th Cir. 1999); *see also Hill*, 79 F.3d at 1484. For example, in *Hahn*, the Ninth Circuit held that a five-month gap between two offenses was "relatively remote" and would require a strong showing of similarity and regularity to constitute relevant conduct. 960 F.2d at 910-11. Hahn was convicted of four counts related to the unlawful possession of a firearm and slightly less than one gram of methamphetamine. The sentencing court adopted the PSR and considered evidence of Hahn's prior methamphetamine dealing and carrying of firearms spanning over a year prior to the offenses of conviction. This year-old evidence was used

---

possession of a gun is considered a "continuing offenses," it concedes that twenty-seven months passed between the offenses. (Red Br. at 24.)

17

as relevant conduct to greatly increase Hahn's sentence. The Ninth Circuit held that there must be a "strong showing of substantial similarity" if the uncharged conduct is both solitary and temporally remote. *Hahn*, 960 F.2d at 911. It remanded the issue to the district court for consideration.

Over two years passed between Kulick's offense of conviction and the extortion offense. The offenses were temporally remote, and as a general rule, "where the conduct alleged to be relevant is relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of temporal proximity." § 1B1.3 cmt. n.9(B). With this in mind, we turn to the next two prongs.

b. Similarity

The similarity between the two offenses is also very weak, as there are significant differences between the offenses of extortion and unlawful possession of a firearm. In evaluating this prong, a court primarily should consider the degree of similarity between the offenses, but can also look to the commonality of victims, the commonality of offenders, the commonality of purpose, and the similarity of *modus operandi*. § 1B1.3 cmt. n.9(A), (B); *see also Wilson*, 106 F.3d at 1144. When "evaluating offenses under the similarity prong, a court must not do so at such 'a level of generality that would render worthless the relevant conduct analysis.'" *Wilson*, 106 F.3d at 1144 (quoting *Hill*, 79 F.3d at 1483). Therefore,

18

the acts in question must exhibit commonalities of factors sufficient to allow for a reasonable grouping of the separate, individual acts into a larger, descriptive whole. It is not enough, however, that the acts stand in close temporal relation to one another. Rather, the similarities of the acts must arise from the character or type of the acts.

*United States v. Baird*, 109 F.3d 856, 865 (3d Cir. 1997).

To find relevant conduct, we require a strong showing of similarity, even where the temporal proximity was strong. For example, we held that possession of drugs for personal use is too dissimilar, and therefore not relevant conduct, to possession of drugs with intent to distribute, even when the drugs were found contemporaneously. *Jansen*, 369 F.3d at 247. Here, Kulick's offense of conviction was unlawful possession of a firearm by a convicted felon, while the allegedly-relevant conduct was extortion. The two offenses are dissimilar, as the only commonality is the fact that possession of a gun is a required element of both charges.

The government mischaracterizes the similarity inquiry by arguing that the similarity prong is satisfied simply because Kulick used the same Beretta pistol in both offenses. In support of this proposition, the government relies on decisions issued by several courts of appeals, which found sufficient similarity where a defendant was charged with multiple counts of unlawful possession of a firearm. *See*, *e.g.*, *United States v. Phillips*, 516 F.3d 479 (6th Cir. 2008);

19

*United States v. Brummett*, 355 F.3d 343 (5th Cir. 2003); *United States v. Santoro*, 159 F.3d 318 (7th Cir. 1998). However, these cases merely stand for the proposition that one count of unlawful possession of a firearm is similar to a second count of unlawful possession of a firearm, and is therefore relevant conduct. For example, in *Phillips*, the Sixth Circuit upheld the district court's enhancement of the defendant's offense level for a 2004 unlawful possession of a firearm offense. It found that the defendant's unlawful possession of firearms in 2002 and 2006 was relevant conduct to the offense of conviction. 516 F.3d at 483-85. The court reasoned that "the contemporaneous, or nearly contemporaneous, possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecution." *Id.* at 483 (quoting *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995)). In so ruling, however, the court relied heavily on the fact that the offenses in 2002, 2004, and 2006 were identical: unlawful possession of a firearm by a convicted felon. *Id.* at 485. Moreover, the court reasoned that Phillips's repeated possession of firearms was for a common purpose: self-defense. *Id.*; *see also* § 1B1.3, cmt. n.9(A) (encouraging sentencing courts to consider whether there is a common purpose for two or more offenses).

Similarly, in *Brummett*, 355 F.3d 343, the Fifth Circuit found relevant conduct where the defendant possessed four firearms on three separate occasions within a nine-month period. In *Santoro*, 159 F.3d 318, the Seventh Circuit also held that the defendant's possession of an assault rifle, within six to nine months prior to his arrest for unlawful possession of a firearm, was part of a common course of conduct. Both

20

*Brummett* and *Santoro* drew on a third case, *United States v. Windle*, for the proposition that a pattern of unlawfully possessing firearms over a relatively short period of time met the "same course of conduct requirement." 74 F.3d 997, 1000-01 (10th Cir. 1996). None of these cases is applicable to the facts here, but instead merely establishes that unlawful possession of a firearm in one year may be relevant conduct to unlawful possession of a firearm in another year. Kulick's case is readily distinguishable because the two counts are for different offenses, and there is no allegation or finding of a common purpose.

### c. Regularity

The regularity inquiry, which considers the number of repetitions of the offenses, is not satisfied on these facts. § 1B1.3(a)(2) cmt. n.9(B). The government contends that even though extortion was an isolated occurrence, regularity is strong because possession of a firearm is a continuing offense. *See United States v. Hull*, 456 F.3d 133, 146 (3d Cir. 2006) (Ackerman, J., dissenting); *see also United States v. Jackson*, 479 F.3d 485, 491 (7th Cir. 2007); *United States v. Blizzard*, 27 F.3d 100, 102 (4th Cir. 1994). In support of its argument, the government relies on a First Circuit decision, *Powell*, for the proposition that "the contemporaneous, or nearly contemporaneous, possession of uncharged firearms is, in this circuit, relevant conduct in the context of a felon-in-possession prosecution." *Powell*, 50 F.3d at 104. The sweeping language in *Powell* permitted the defendant's prior unlawful possession of a firearm to be relevant conduct for his underlying unlawful possession of a firearm conviction

21

offense. It did not, however, permit an unrelated count to be relevant conduct solely because of the continuous possession of a firearm.

The District Court never explicitly found that Kulick possessed a Beretta pistol throughout the twenty-seven month period between the extortion and unlawful possession of a firearm offenses. It suggested as much, however, by stating that Kulick "maintained control of the firearms, including a Beretta handgun, which according to witnesses he carried and at least on one occasion used to threaten an employee." (App. at 100.) Kulick even conceded this point. (Blue Br. at 16-17 n.12, 25 n.21.) Regardless of whether Kulick's possession was continuous for the entire twenty-seven months, we have never held that continuous possession of a firearm is sufficient to automatically render two offenses relevant conduct, and we decline to do so now.

\* \* \*

Kulick's extortion offense was not relevant conduct to his unlawful possession of a firearm because the time interval was considerable, there was very little similarity between the offenses, and there was no regularity. Moreover, it would eviscerate the effect and import of the Guidelines to permit an enhancement on these facts. When "illegal conduct does exist in 'discrete, identifiable units' apart from the offense of conviction, the Guidelines anticipate a separate charge for such conduct." *Hill*, 79 F.3d at 1482 (quoting *Hahn*, 960 F.2d at 909). As the extortion offense is not relevant conduct under § 1B1.3(a)(2), the District Court committed clear error

22

by increasing Kulick's sentence through the § 2K2.1(c)(1) cross-reference.[7]

_____

[7] The District Court was entitled to consider the extortion offense as related conduct warranting a variance from the guidelines under a § 3553(a) analysis. Indeed, conduct that is in some way "related" to the offense conduct need not be "technically covered by the definition of relevant conduct" in order to be considered in a § 3553(a) analysis. *Baird*, 109 F.3d at 864.

The government unpersuasively argues that the District Court was entitled to grant an enhancement if it found that extortion was merely related conduct, rather than relevant conduct. It relies on our dicta in *United States v. Harrison*, 357 F.3d 314, 320 (3d Cir. 2004), for this proposition. This argument fails for three reasons. First, the District Court did not use the extortion offense as related conduct, but instead "adopt[ed] the reasoning of the probation officer that if the threat was made, 2B3.2 based on *relevant conduct* should apply." (App. at 80) (emphasis added). Second, as discussed above, we hold that § 2K2.1(c)(1) cross-references are limited to relevant conduct under § 1B1.3. Third, the government's broad reading of *Harrison* is inaccurate. In *Harrison*, the defendant pled guilty to transporting child pornography in violation of 18 U.S.C. § 2252(a)(1). The district court applied a two-level enhancement because "a computer was used for the transmission of the material." U.S.S.G. § 2G2.2(b)(5). Based on the specific facts of that case, we held that the enhancement was properly applied because the conduct fell

23

## B. Variance and Departure

Although we have already determined that the District Court committed clear error by increasing Kulick's offense level through the § 2K2.1(c)(1) cross-reference, we consider nonetheless Kulick's second contention to provide guidance to the District Court on remand. Kulick argued at sentencing that the District Court should grant either a downward departure or a variance from the Guidelines' range on the basis of his post-arrest alcohol treatment and long-term charitable contributions. The District Court refused to grant the downward departure or variance and instead sentenced Kulick to a term of years at the low end of the imprisonment range. Before this Court, Kulick argues that the District Court did not formally rule on the departure request or, in the alternative, did not adequately explain its decision not to vary downward under § 3553(a). These arguments have little

_____

squarely within § 2G2.2(b)(5). *Id*. at 319. In dicta, we referenced *Baird* for the proposition that if a defendant pleads guilty to one offense, a lesser offense that is a necessary element of the larger offense may be related conduct, even if it does not fit the Guidelines definition in § 1B1.3. *Id*. at 320. Accordingly, we noted that Harrison's downloads of pornography were related conduct because "[i]f Harrison had not downloaded the images, he could not have trafficked in them, and the two actions are therefore closely tied." *Id*. The dicta in *Harrison* cannot properly be read to suggest that related conduct can always sustain an enhancement, and it does not do so here.

24

merit. The record reveals that the District Court adequately explained its decision to stay within the Guidelines.

Kulick first argues that the District Court did not "formally rul[e] on the motions of both parties and stat[e] on the record whether [it was] granting a departure and how that departure affect[ed] the Guidelines calculation." *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quoting *United States v. King*, 454 F.3d 187, 196 (3d Cir. 2006)). A close examination of the record reveals that Kulick's counsel actually requested a variance, rather than a departure:

> I would like to move to -- I have touched on one, and *this is probably more of a variance issue than a departure from the guidelines issue*, and I think when the Court is looking at what is an appropriate sentence and when to apply the guidelines here, look at the real, true acceptance of responsibility that Mr. Kulick has undertaken here.
>
> Part of the problems, past problems in Mr. Kulick's life are due to alcohol abuse and dependency. This case, Your Honor, was a life-changing event for Mr. Kulick.
>
> Immediately after being arrested in this matter and released, Mr. Kulick undertook inpatient alcohol abuse treatment and therapy. He maintains on it. I think you saw the letter that we have attached from Dr. Colangelo that

25

talked about how he has maintained his sobriety ever since this case started, and not only has he maintained that sobriety, but he has made it a point, as just mentioned to help out in any way possible. That includes law enforcement. That includes charitable involvement. That includes a renewed commitment to his wife and two young children. I think the Court should consider that in deciding whether this is a typical case.

Another ground for a variance, Your Honor, in addition to his alcohol rehabilitation and charitable works and the cooperation is this, is a very unusual felon in possession case.

(App. at 84-85) (emphasis added). Accordingly, the District Court properly treated the argument as a request for a variance rather than a departure.[8]

Kulick next argues that the District Court did not give sufficient justification for its decision not to vary downward under § 3553(a). This argument also fails. The District Court

---

[8] Even if Kulick had requested a departure, "[w]e do not have jurisdiction to review discretionary decisions by district courts to not depart downward . . . [unless] the district court's refusal to depart downward is based on the mistaken belief that it lacks discretion to do otherwise." *Untied States v. Jones*, 566 F.3d 353, 366 (3d Cir. 2009) (quoting *United States v. Vargas*, 477 F.3d 94, 103 (3d Cir. 2007)).

26

fully articulated the justification for Kulick's sentence. It twice acknowledged Kulick's alcohol abuse treatment. First, the court noted: "[t]he report that I have read is certainly detailed, together with the statements by Mr. Moran and Mr. Schwartz and yourself concerning with regard to [sic] rehabilitating yourself from the problem and the struggles you have with alcoholism." (App. at 99-100.) Second, the court stated, "[Kulick] has a history of great struggle with alcohol, and he has done work at Clearbrook Manor and Father Martin's Ashley in Maryland, and he's under the care and counseling of Dr. Colangelo." (*Id.* at 101.) Both of these statements reveal that the District Court actively considered Kulick's arguments for a downward variance based on his post-arrest alcohol treatment.

In contrast to Kulick's alcohol abuse treatment, it is unclear whether the District Court explicitly acknowledged Kulick's charitable contributions at sentencing. The court ambiguously remarked that, "[Kulick] has a history of great struggle with alcohol, and he *has done work at Clearbrook Manor* and Father Martin's Ashley in Maryland, and he's under the care of Dr. Colangelo." (*Id.*) (emphasis added). Kulick argues that this statement was exclusively about his alcohol abuse treatment at Clearbrook Manor. The government contends that this statement was also a passing reference to his charitable contributions to Clearbrook Manor. (*See* PSR Objection Letter, Feb. 24, 2009, p. 5.) The fact that this is ambiguous, however, is not dispositive.

A "court need not discuss every argument made by a litigant if an argument is clearly without merit. . . . Nor must a

27

court discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006). Even though the District Court did not explicitly and unambiguously reference the charitable contributions, we believe it did not ignore any of Kulick's arguments in favor of a downward variance.

Moreover, the Guidelines actually discourage a district court from considering a defendant's charitable contributions. According to § 5H1.11 of the Guidelines, charitable and "similar prior good works are not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.11. Therefore, while a district court is not forbidden from considering the charitable contributions of a defendant, it must find "that this factor existed to an exceptional degree or, in some way, that makes the case different from the ordinary case in which the factor is present." *United States v. Serafini*, 233 F.3d 758, 772 (3d Cir. 2000) (internal citations omitted) (upholding departure based on extraordinary charitable activity evidenced by numerous letters from personal beneficiaries). Thus, the District Court had substantial discretion to decide the appropriate weight, if any, to give to evidence of Kulick's charitable donations. *Id*. The District Court reasonably concluded that the charitable contributions should be given little to no weight.

The remainder of the District Court's sentence explained the reasons that the court did not believe a downward variance was warranted. The court noted that Kulick had "been in contact with the law on numerous

28

occasions," came "from a better background, and should have known better." (App. at 102.) The court concluded that it had taken into account "everything [Kulick] did with respect to the charges that were placed in this matter." (*Id.*) We find that the District Court adequately considered all factors under Section 3553(a) at the sentencing hearing.

## IV.

For the foregoing reasons, we will vacate judgment of sentence of the District Court and remand for further proceedings. We find that the extortion offense was not relevant conduct to Kulick's unlawful possession of a firearm offense. Accordingly, Kulick should be resentenced using a base offense level of 19, which corresponds to the unlawful possession of a firearm offense.