PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

─────────────

Nos. 12-3754 & 12-3755

─────────────


UNITED STATES OF AMERICA

v.

KHALIL CARTER,
AKA Joe Wales,

Appellant

─────────────

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action
Nos. 2-06-cr-00342-001 / 2-07-cr-00370-001)
District Judge: Honorable Anita B. Brody

─────────────

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2013

Before:  McKEE, Chief Judge,
AMBRO, and GREENBERG, Circuit Judges

(Opinion filed: September 13, 2013)

Thomas A. Dreyer, Esquire
6 Dickinson Drive
Building 100 – Suite 106
Chadds Ford, PA   19317

      Counsel for Appellant

Zane David Memeger
  United States Attorney
Robert A. Zauzmer
  Assistant United States Attorney, Chief of Appeals
Sarah L. Grieb
  Assistant United States Attorney
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106

      Counsel for Appellee

————————

OPINION  OF  THE  COURT

————————

AMBRO, Circuit Judge

Appellant Khalil Carter was sentenced to 37 months' imprisonment for violating his supervised release after he pled guilty to two separate offenses in state court. In imposing its sentence, the District Court looked to Carter's actual conduct to determine whether he had committed a

"crime of violence." Carter contends that the Court should be limited to the offenses charged, none of which constitutes a "crime of violence." We conclude there was no error. Even where no crime is actually charged, a district court may consider a defendant's actual conduct in concluding that he has violated the terms of his supervised release through the commission of a subsequent offense. That particular offense, moreover, may be a "crime of violence." Here, however, the District Court should have set out Carter's specific crime of violence. Yet because it provided an alternate basis for Carter's sentence, any error was harmless, and we affirm the sentence imposed.

## I.     Background

In May 2008, Appellant Khalil Carter pled guilty to federal charges for conspiracy to use and produce counterfeit credit cards and armed robbery of a pharmacy. These convictions resulted in a United States Sentencing Guidelines ("U.S.S.G.") range of 121 to 130 months' imprisonment. Nonetheless, the District Court exercised its discretion to sentence Carter to only 45 months' imprisonment followed by three years' supervised release. Carter began supervised release in November 2009.

The United States Probation Office filed a petition for revocation of supervised release in November 2011 based on two incidents. In June 2010, the thirteen-year-old daughter of Carter's girlfriend complained that Carter had sexually assaulted her. Carter pled guilty in state court to misdemeanors for endangering the welfare of a child and corruption of a minor. 18 Pa. Cons. Stat. Ann. §§ 4304, 6301. He was sentenced to five years' probation. Second, in October 2011 Carter was arrested for attempting to use stolen

3

credit cards. He pled guilty to access device fraud and was sentenced to 9 to 23 months' imprisonment.[1] *Id.* § 4106.

In revoking Carter's supervised release, the District Court calculated the applicable range of imprisonment. *See* U.S.S.G. § 7B1.4 (2011).[2] To do so, it needed to determine whether Carter had committed a Grade A or Grade B violation of his release—a significant distinction, as a Grade B violation would result in a Guidelines range of 6 to 12 months', while a Grade A violation would raise the range to 27 to 33 months' imprisonment. Both parties agreed that the credit card fraud constituted a Grade B violation of Carter's supervised release. The Government, however, argued that the June 2010 sexual assault was a more serious Grade A violation because it was a "crime of violence" as a "forcible sex offense," pointing to evidence of Carter's actual conduct. Carter, however, testified that he never touched the girl and that he never pled to doing so.

After an initial revocation hearing, the Court held a subsequent hearing in September 2012 to consider the nature of Carter's plea and the underlying facts of the case. Evidence included the victim's statement, Carter's guilty plea transcript, a toxicology report, testimony by the victim's

---

[1]This second conviction was deemed a violation of Carter's probation in a prior case in Delaware County, Pennsylvania, for which Carter was also sentenced to one to two years' imprisonment to run consecutively.

[2] Unless otherwise noted, all references to the United States Sentencing Commission Guidelines Manual are to the version effective November 1, 2011. This was the version in effect for Carter's violation hearing at which he was sentenced. *See* U.S.S.G. § 1B1.11(a).

4

mother, and an oral statement by Carter. The Court credited the mother's testimony, which indicated that Carter had taken the girl out to dinner, provided her with alcohol, made inappropriate comments, and touched her genitals while she pretended to be asleep.

On that evidence, the District Court concluded that Carter's conduct amounted to a forcible sexual offense, classifying it as a "crime of violence" under the Guidelines and a Grade A violation of supervised release. It further explained that it was "outrageous" that Carter gave the underage victim alcohol, and was similarly disappointed that Carter had committed credit card fraud while on supervised release for that same offense. App. at 104. Observing that Carter had abused the "break" he had been given on his initial sentence, the Court sentenced him to 37 months' imprisonment—four months above the Guidelines range for a Grade A offense—to run consecutively to any state sentence, and explained that it would have imposed the same sentence regardless whether the sexual assault was a Grade A or B violation.

In this appeal, Carter contests the determination that his assault offense was a Grade A violation because he was not charged with or convicted of such an offense.[3] He argues that this determination caused an incorrect Guidelines range and therefore a procedurally unreasonable sentence.

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.  Discussion

### A.  Standard of Review

In scrutinizing a sentence imposed, "we review a district court's legal conclusions regarding the Guidelines *de novo*, its application of the Guidelines to the facts for abuse of discretion, and its factual findings for clear error." *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009) (internal citations omitted).  Procedural errors are reviewed for abuse of discretion with varying degrees of deference depending on the nature of the particular error asserted. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008).  As such, "if the asserted procedural error is purely factual, our review is highly deferential and we will conclude there has been an abuse of discretion only if the district court's findings are clearly erroneous."  *Id.*  On the other hand, we give no deference to purely legal errors, such as "when a party claims that the district court misinterpreted the Guidelines."  *Id.*

Facts relevant to the application of the Guidelines are established by a preponderance of evidence.  *See United States v. Grier*, 475 F.3d 556, 568 (3d Cir. 2007) (*en banc*); *see also* 18 U.S.C. § 3583(e)(3) (revocation appropriate if the court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release").

### B.  Carter's Sentence

Supervised release requires "that the defendant not commit another Federal, State, or local crime during the term of supervision."  18 U.S.C. § 3583(d).  In revoking a term of supervised release, a district court considers the grade of violation—A, B, or C, with A being the most serious.  *See* U.S.S.G. §§ 7b1.1–1.4.  The grade of violation directly affects the Guidelines range for the resulting sentence.

6

### 1. Categorizing Violations of Supervised Release

Grade A violations involve "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a crime of violence." U.S.S.G. § 7B1.1(a)(1). A "crime of violence" is defined in § 4B1.2 and the corresponding commentary. § 7B1.1 cmt. n.2. Under § 4B1.2, a crime of violence is "any offense under federal or state law . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." The commentary explains that a "'[c]rime of violence' includes . . . forcible sex offenses." § 4B1.2 cmt. n.1. Because both parties agree that the credit card fraud was a Grade B violation, Carter's Guidelines range ultimately depends on whether the sexual assault should be characterized as a more serious Grade A violation, meaning here whether it was a "crime of violence." *See* § 7B1.1(b) (in the context of multiple violations, "the grade of the violation is determined by the violation having the most serious grade").

Carter argues that none of the state law charges could support a finding of a forcible sex offense. Specifically, he explains that those charges either: (1) did not have any forcible sexual offense as an element; or (2) where forcible compulsion was one potential element among others, he was necessarily charged with the provision corresponding to a lack of consent rather than a use of force. *See, e.g.*, 18 Pa. Cons. Stat. Ann. § 3125(a)(1), (2) (containing separate provisions for aggravated indecent assault made either "without the complainant's consent" or "by forcible compulsion"). Carter's position is that the charges against him are evidence that he did not commit a forcible sexual offense," but his argument seems to assume that a district

7

court may only consider crimes actually charged when determining the grade of a violation.

We clarify that, because a district court may consider a defendant's actual conduct in the revocation context, it is not limited to the actual charges or convictions in determining the grade of the violation. As noted above, § 7B1.1 defines a "crime of violence" by reference to § 4B1.2. This internal reference may cause confusion, as § 4B1.2 defines a "crime of violence" for determining whether a defendant is a career offender, and that context generally requires application of the formal categorical approach to determine whether a particular offense is such a crime. *United States v. Siegel*, 477 F.3d 87, 90 (3d Cir. 2007). To determine if a defined offense has occurred under the categorical approach, courts may consider only the statutory language of the offense committed and the fact of conviction, but not the particular facts underlying the conviction.[4] *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also Garcia v. Att'y Gen.*, 462 F.3d 287, 291 (3d Cir. 2006) ("[W]e must look only to the statutory definitions of the prior offenses, and may not consider other evidence concerning the defendant's prior

---

[4] Similarly, a court may use what is termed a modified categorical approach solely "when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276, 2283 (2013). This "permits sentencing courts to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Id.* at 2281. The modified categorical approach nonetheless "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." *Id.* at 2285.

crimes, including . . . the particular facts underlying [a] conviction." (citation and internal quotation marks omitted)).

In the revocation context, however, the categorical approach does not apply, and district courts may consider a defendant's actual conduct in determining whether they have broken the law and thus the terms of their supervised release. The Guidelines provide that a violation of supervised release "does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding." U.S.S.G. § 7B1.1 cmt. n.1. Instead, "the grade of the violation is to be based on the defendant's *actual conduct*," and "may be charged *whether or not* the defendant has been the subject of a separate federal, state or local prosecution for such conduct." *Id.* (emphases added).

We have previously explained that "there is no requirement of conviction or even indictment" to find that a defendant has violated supervised release by committing a crime. *United States v. Poellnitz*, 372 F.3d 562, 566 (3d Cir. 2004). This approach comports with other courts of appeals that have considered the issue. *See United States v. Jones*, 696 F.3d 932, 937 (9th Cir. 2012) ("[U]ncharged conduct . . . can form the basis of a supervised release violation even when the defendant has not been charged or convicted."); *United States v. McNeil*, 415 F.3d 273, 278 (2d Cir. 2005) ("[T]he grade classification rests on the 'actual conduct' underlying the charged violation supporting the revocation of release regardless of whether or how the defendant may be charged in a criminal prosecution for the same underlying conduct."); *United States v. Trotter*, 270 F.3d 1150, 1155 (7th Cir. 2001) ("Revocation of supervised release . . . proceeds on real-offense rather than charge-offense principles."); *United States v. Schwab*, 85 F.3d 326, 327 (8th Cir. 1996) (*per curiam*) (same).

9

Thus, a district court may inquire as to the particulars of a defendant's actions in determining whether he has violated his release by committing "another Federal, State, or local crime during the term of supervision." 18 U.S.C. § 3583(d). Because revocation of release can proceed even without charges being filed, the categorical approach is necessarily not applicable in the revocation context. Hence we conclude that the District Court was entitled to rely on the facts presented at the revocation hearing in analyzing the nature of Carter's violation, and was not limited by the charges filed or offenses of conviction.

## 2. The District Court's Findings

In this case, the District Court held that Carter had committed "a forcible sexual offense under the [G]uidelines" and thus a "crime of violence" under § 7B1.1(a)(1). However, it did not name the specific forcible sex offense that it believed Carter had committed. Although the Court was entitled to find such a violation by a preponderance of evidence in considering his actual conduct, it should have indicated the particular "crime of violence" for which Carter was responsible. In classifying violations of supervised release, § 7B1.1(a) requires that the defendant commit a federal, state, or local offense. Furthermore, in determining whether an offense is a "crime of violence," § 4B1.2 requires that it contain an element of force. It is therefore not enough to say that a defendant's actions were simply violent or forcible without pointing to a crime containing those same elements.

This omission leaves us unable to review the Court's exercise of discretion. *See Primas v. Dist. of Columbia*, 719 F.3d 693, 699 (D.C. Cir. 2013) ("[T]he district court's failure to explain itself leaves us 'unable to review the . . . exercise of its discretion.'" (quoting *E.E.O.C. v. Nat'l Children's Ctr.,*

10

*Inc.*, 98 F.3d 1406, 1410 (D.C. Cir. 1996)); *United States v. Loy*, 191 F.3d 360, 371 (3d Cir. 1999) (remanding where the district court failed to explain why it imposed special conditions of supervised release, as required by 18 U.S.C. § 3553(c), and explaining that such reasoning "ensures that appellate review does not 'flounder in the zone of speculation'" (quoting *United States v. Edgin*, 92 F.3d 1044, 1049 (10th Cir. 1996)). We decline to speculate which federal or state offense the Court believed had been committed, and for this reason we cannot determine whether it was appropriately a "crime of violence."[5]

An error requires correction if it is not harmless. We are satisfied, however, that the error here was harmless because the District Court explained that it would have ordered the same sentence even without finding a "crime of

---

[5] As such, we express no opinion on whether Carter's actions constituted a forcible sex offense qualifying as a crime of violence. We have previously held—in regard to § 2L1.2 of the Guidelines—"that the Sentencing Commission did not mean to limit 'forcible sexual offenses' to those involving the application of direct physical force, as opposed to some other type of compulsion." *United States v. Remoi*, 404 F.3d 789, 794 (3d Cir. 2005). Though we need not decide the issue, we are skeptical that *Remoi* applies in the § 4B1.2(a)(1) context, which, unlike § 2L1.2, specifically requires "as an element the use, attempted use, or threatened use of physical force." *Compare* § 4B1.2(a)(1), *with* § 2L1.2(b)(1)(A). Moreover, in *United States v. Siegel*, 477 F.3d 87 (3d Cir. 2007), we explained that sexual offenses involving "insignificant or minor touching" should not be automatically "shoehorned" into "crimes of violence" under § 4B1.2. *Id.* at 92.

11

violence." *See, e.g.*, *United States v. Jackson*, 549 F.3d 1115 (7th Cir. 2008) (holding that any error in the sentence imposed following revocation of release was harmless "[b]ecause the district court made clear that it would have imposed the same prison term upon him regardless of whether his [crime] was classified as a crime of violence or not").

In evaluating harmlessness, we "decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor." *Williams v. United States*, 503 U.S. 193, 203 (1992); *see also United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008) (explaining that harmless error can occur where it is "clear that the error did not affect the district court's selection of the sentence imposed"). We remain mindful that "when the starting point for the . . . analysis is incorrect, the end point, i.e., the resulting sentence, can rarely be shown to be unaffected." *Langford*, 516 F.3d at 217. Specifically, an error is not harmless where a district court simply states that it would have imposed the same sentence without pointing to the alternative Guidelines range and explaining its decision to arrive at the specific sentence. *United States v. Wright*, 642 F.3d 148, 154 n.6 (3d Cir. 2011).

It appears that the Court in our case was aware that Carter's Guidelines range for a Grade B violation was 6 to 12 months' imprisonment, while the range for a Grade A violation was 27 to 33 months. App. at 50. Here, the Court exercised its discretion and imposed a sentence of 37 months' imprisonment as an "appropriate sentence . . . [,] whether it was an A violation or a B violation." *Id.* at 104. In departing upward from both ranges, the District Court stressed that Carter had committed the same sort of credit card fraud for which he was serving supervised release, had given his underage victim alcohol, and had abused the leniency shown by the Court at his initial sentencing. *Id.* We cannot conclude this was an abuse of discretion.

12

### III. Conclusion

The categorical approach does not apply when imposing a sentence in revoking a term of supervised release under U.S.S.G. § 7B1.3. A district court may consider a defendant's actual conduct when determining—by a preponderance of evidence—whether that defendant violated the terms of his release by breaking the law. In doing so, the court must point to a provision of law that has been broken. Though it did not do so explicitly here, we are still able to affirm the sentence imposed based on the District Court's alternative sentence calculation and explanation of the reasons it found 37 months' imprisonment an appropriate sentence for Carter's supervised release violations.

United States v. Khalil Carter, Nos. 12-3754/5

McKEE, Chief Judge, concurring.

I join the Majority Opinion in its entirety. For the reasons my colleagues explain, I agree that courts may consider a defendant's actual conduct in order to properly classify a violation of supervised release as the District Court did here.[1] However, I write separately to emphasize that the inquiry underlying a sentence for violating the terms of supervised release is quite different from that required to determine the appropriate sentence for the commission of a crime. When the basis of a supervised release violation is the commission of a new crime, the supervising court should not impose a sentence to punish the defendant for that new offense. Punishment is best left to the judge who is assigned to handle the new criminal case. The judge whose supervised release is violated should instead "sanction the violator for failing to abide by the conditions of the court-ordered supervision," U.S.S.G. ch. 7, pt. A3(b), and impose a sentence that will "facilitate the integration of offenders back into the community." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011)).

## I.

As noted by my colleagues, our "review of sentencing decisions is limited to determining whether they are

_____

[1] I refer to supervised release because Carter was sentenced for violating supervised release. I note, however, that courts generally treat "violations of the conditions of probation and supervised release as functionally equivalent" because both are violations of court-ordered supervision. U.S.S.G. ch. 7, pt. B, introductory cmt.; *see, e.g., United States v. Frazier*, 26 F.3d 110, 113 (11th Cir. 1994) ("[W]e believe that Congress considered probation revocation and supervised release revocation to be so analogous as to be interchangeable."). Therefore, although I refer to "supervised release," my comments also apply to sentences imposed for violations of probation.

'reasonable'" under the familiar "abuse of discretion" standard of review. *Gall v. United States*, 552 U.S. 38, 46 (2007); Maj. Op. at 5. Our inquiry entails examining whether a district court correctly followed the prescribed procedure for imposing a sentence. The court must determine the advisory sentencing range in the U.S. Sentencing Commission Guidelines Manual. It must then rule on motions for departure and, if a motion is granted, explain how it affects the advisory sentencing range. Lastly, the court must afford the parties an opportunity to argue for whatever sentence they deem appropriate, and decide upon an appropriate sentence after considering the applicable sentencing factors in 18 U.S.C. § 3553(a). *See United States v. Lofink*, 564 F.3d 232, 237-38 (3d Cir. 2009); *United States v. Bungar*, 478 F.3d 540, 543-44 (3d Cir. 2007).

As my colleagues explain, the District Court erred at the first step in deciding upon an appropriate sentence for Carter's violation of supervised release. It failed to identify the specific sex offense Carter committed. That determination was key to selecting the appropriate advisory sentencing range. *See* Maj. Op. at 9-10.

## II.

To determine whether a sentence is reasonable, we examine "whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (*en banc*) (citation omitted). A district court need not "discuss and make findings as to each of the § 3553(a) factors," but it "must be clear that the district court understood and reasonably discharged its obligation to take all of the relevant factors into account in imposing a final sentence." *United States v. Kulick*, 629 F.3d 165, 176 (3d Cir. 2010); *Grier*, 475 F.3d at 571 (citation omitted).

18 U.S.C. § 3583(e) specifically applies to a sentencing for a violation of supervised release. That provision is entitled: "Modification of Conditions or Revocation." It states, in relevant part, that a court should refer to the following subsections of 18 U.S.C. § 3553(a) when modifying or revoking a term of supervised release:

2

(1) the nature and circumstances of the offense and the history and characteristic of the defendant;

(2) the need for the imposed sentence--

. . .

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant;

*(D) to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;*

(4) the kinds of sentence and the sentencing range established for . . . the applicable category offense committed by the applicable category of defendant as set forth in the guidelines . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission …;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

(emphasis added).

Notably, § 3583(e) omits consideration of § 3553(a)(2)(A), which directs courts to the punitive purposes of sentencing. *See* 18 U.S.C. § 3553(a)(2)(A) (providing that a court shall consider the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for

3

the law, and to provide just punishment for the offense."); *Bungar*, 478 F.3d at 543 n.2.

The punitive purposes of sentencing are omitted from consideration under § 3583(e) because they are inconsistent with the primary purpose of supervised release —"to facilitate the integration of offenders back into the community." *Murray*, 692 F.3d at 280 (quoting *Albertson*, 645 F.3d at 197).[2] The Supreme Court has made it clear that "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000) (citations omitted); *see also* S. REP. NO. 98-225, at 124 (1983) ("[t]he primary goal of such a term is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release.").[3]

This focus on the need to assist in the offender's rehabilitation will frequently counsel against responding to a violation of supervised release by imposing a custodial sentence at all because incarceration does not advance the primary focus of successful reintegration into society. *See Tapia v. United States*, 131 S. Ct. 2382, 2390 (2011) ("Do not think about prison as a way to rehabilitate an offender."); *and* 28 U.S.C. § 994(k) ("The Commission shall insure that the

---

[2] *But see United States v. Young*, 634 F.3d 233, 241 (3d Cir. 2011) ("[C]onsideration of, and explicit reference to, the § 3553(a)(2)(A) factors in imposing a sentence for the violation of supervised release is not a procedural error that renders the sentence *per se* unreasonable. Of course, there may be a case where a court places undue weight on the seriousness of the violation or the need for the sentence to promote respect for the law and provide just punishment.").

[3] The reason that courts need to be concerned with an offender's successful reentry into society is clear; it is beyond dispute that the vast majority of all offenders sentenced to prison will one day be released back into the community.

4

guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.").

Rather than attempting to punish for the new criminal conduct, "the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision," which is referred to as a "breach of trust." U.S.S.G. ch. 7, pt. A3(b). As the Sentencing Commission explains, and as I noted at the outset, "the court with jurisdiction over the criminal conduct leading to revocation is the more appropriate body to impose punishment for that new criminal conduct, and that, as a breach of trust inherent in the conditions of supervision, the sanction for the violation of trust should be in addition, or consecutive, to any sentence imposed for the new conduct." *Id.*; *see also Bungar*, 478 F.3d at 544 (A "[s]entence is imposed for [a] violation[] of supervised release primarily to sanction the defendant's breach of trust . . .").[4]

The record here could be interpreted in a manner that would raise a concern that the District Court may not have "reasonably discharged its obligation to take *all* of the relevant factors into account in imposing [its] final sentence." *Grier*, 475 F.3d at 571 (citation omitted) (emphasis added). The transcripts from Carter's two violation hearings do not indicate that the Court considered § 3553(a)(2)(D), which would have focused the Court's attention on the need to provide Carter with "educational or vocational training, medical care, or other correctional treatment in the most effective manner." *Cf. United States v. Olhovsky*, 562 F.3d 530, 549 (3d Cir. 2009) ("[I]t is exceedingly difficult to review this sentencing transcript without becoming convinced

---

[4] Nevertheless, as I note below, *see infra* at III, the overarching principle of parsimony applies to revocation proceedings as well as to the initial sentencing, *see* 18 U.S.C. § 3553(a), and fidelity to that principle may preclude the imposition of additional incarceration absent concerns of public safety.

that the district court was so appalled by the offense that it lost sight of the offender."). Rather, imprisonment appears to have been the primary focus. *See, e.g.,* App. at 104.[5]

Nevertheless, a reviewing court can affirm a sentence even if the sentencing court did not elaborate all of the factors considered, so long as the record is sufficient to conclude that the sentencing court considered the appropriate factors, and the resulting sentence is reasonable. *See Kulick*, 629 F.3d at 176. Here, it is clear that the Court was very concerned with the need to protect the public from Carter's predatory behavior, and that concern was more than justified by Carter's conduct while on supervised release.[6] Given Carter's conduct, and the danger he posed to the most defenseless members of the community, the custodial sentence imposed

---

[5] Specifically, the transcripts from Carter's violation hearings indicate that he Court accounted for §§ 3553(a)(1), (4), (5) and (6) by hearing in-depth arguments, and examining evidence, from both parties on whether Carter's conduct constituted a "forcible sex offense" and, was thus a "crime of violence," giving rise to a Grade A supervised release violation under Policy Statement § 7B1.1 of the Guidelines. *See, e.g.,* App. at 38-50; 104-05. That inquiry presumably included some consideration of § 3553(a)(2)(B) and (C)—the need for deterrence and to protect the public—because the Court departed upward from the advisory range of 27 to 33-months to impose a 37-month sentence. *See* App. at 104. Section 3553(a)(7) was apparently accounted for because the Court required that previously ordered, yet unpaid, restitution be satisfied. *See* App. at 105.

[6] In *United States v. Bungar*, a similar concern supported a sentence of five years imprisonment based on new offenses committed by a defendant on supervised release. 478 F.3d at 546 ("the Court sentenced Bungar above the suggested range based on its concerns that his return to illegal conduct, his extensive history of violent criminal offenses, and the recent evidence of domestic violence, showed not only that he continued to pose a threat to the community, but constituted a significant breach of the considerable trust that the Court reposed in him by granting a generous downward departure [in his initial sentencing] in 1997").

was reasonable and there is no need for a remand to cure the procedural imperfections.

## III.

Although I agree that remand is not warranted, it is nevertheless important to emphasize that § 3553(a) provides that "a court must impose a sentence that is 'sufficient *but not greater than necessary*, to comply with purposes of sentencing.' This requirement is often referred to as 'the parsimony provision,' and the Supreme Court has referred to it as the 'overarching instruction' of 18 U.S.C. § 3553(a)." *Olhovsky*, 562 F.3d at 547-48 (citing *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)).

Considerations of parsimony appear to be particularly appropriate when a court is focused on assisting with reintegration into society rather than punishing criminal behavior. However, given the nature of Carter's violation, I believe the record is sufficient to establish that the Court acted reasonably in imposing a custodial sentence that clearly appears to have been driven by the Court's concern for the danger Carter posed to the community rather than the objective of rehabilitation that would have otherwise restrained the Court's discretion in such a proceeding. *See* 18 U.S.C. § 3553(a)(2)(C).